## AMENDED COMPLAINT WITH JURY DEMAND

### I. Introduction

This is a civil rights action filed by Jeffrey Paul Barnard, a federal presentence inmate, being held at Somerset County Jail, without bail on instant charge of **18 U.S.C. § 922(g)(1)**. From this point forward, Mr. Barnard, will be known as plaintiff. Plaintiff, seeks redress from this Honorable Court, for damages and injunctive relief under **42 U.S.C. § 1983**, with jurisdiction under **28 U.S.C. § 1342**, in accordance with **Rule 65 Fed.R.Civ.P.**, alleging the use of deadly and excessive force, in violation of the **Fourth Amendment**, denial of proper medical care in violation of the **Eighth Amendment**, to the United States Constitution and confinement in AD-SEG (Administrative Segregation) in violation of Due Process Clause of the... **Fourteenth Amendment**, to the U.S. Constitution. This plaintiff, also alleges Federal and State **Torts** of assault and battery and negligence.

### II. Jurisdiction

1. The Court has jurisdiction over plaintiff's claims of violation of Federal Constitutional Rights under **28 U.S.C. §§ 1331(1)**, and **1343**, pursuant to **42 U.S.C. § 1985**, and...

2. The Court has supplemental jurisdiction over plaintiff's State law Tort claims under **28 U.S.C. § 1367**.

### III. Parties

3. The plaintiff, Jeffrey Paul Barnard, was harassed, threatened with deadly and lethal force, he was then shot in the Head/Face as a result of this threat by a Maine State Trooper.

4. Defendants, Janett Mills, Robert Williams, Scott Duff... Harold Page, Barton Tokas, Troy Bires, Deputy Campbell,& Frost...

4. Cont... Rob Angelo, John Doe #1, John Doe #2, John Doe #3. They are all being sued in their individual capacities.

5. All individual defendants above in (4.) are employed and work for the following entities... State of Maine, Maine State Police, City of Ellsworth, Ellsworth Police Department, Hancock County Seriff Department, City of Bangor, and Bangor Police Department. All these defendants are being sued in their official capacities.

6. Plaintiff, at this time, humbly seeks this Honorable Courts permission in advance, to allow him to amend this complaint as necessary with other individual defendants, whom were also named in the State Torts, that were submitted with filing of plaintiff's original complaint in this matter, as well as, John Does 1,2 & 3... and their real names. Or to any other individual defendants that are employed by above entities in (5.), as this case investigation progresses... and unfolds, as to protect plaintiff's rights and interest, as well as, to promote fair and true justice for all parties of concern.

7. Defendants... Dale Lancaster, Corey Swope, Sean Maguire, Dawn Pullin, Charles Haley, Mike Rizzo, Gerald Madore, Terry Thurlow, Lisa Cates, and Dave Needham. They are all being sued in their individual capacities.

8. All individual defendants above in (7.) are employed by the following entities... Somerset County Sheriff Department, Somerset County Jail, and MED-PRO & Associates, who has been contracted and hired by Somerset County Sheriff Department, as medical provider for Somerset County Jail facility. They are all sued in their official capacities.

9. Plaintiff, once again humbly seeks this Honorable Courts permission in advance, to amend this complaint, as to any individual...

(3)

9. Cont... defendants named on State Tort, as to (7. & 8.) above, as this case investigation progresses and unfolds, as to protect this plaintiff's rights and interest, and to promote an interest in justice as well. ( "Please see enclosed copy of State Tort in reference to the above (7. & 8.) entities and individual defendants".)

10. All above[above]defendants have acted, and continue to act, under **color of state law** at all times relevant to this complaint.

### IV. Facts

11. On or about **May 16 & 18, 2014...** The Ellsworth Police Department, was called out to the property located at 303 North Street, in Ellsworth, Maine. These officer's were responding to a **civil dispute** between the owner of above property, this plaintiff and his wife.

12. Plaintiff and his wife had been living on this gentleman's property for just over two years, and had a **verbal/handshake-contract** and **agreement** with this gentleman to stay on his property in our... thirty (30) foot Travel Trailer. This was a long term and extensive agreement, in that the plaintiff was the **care-taker** of the property, and this agreement involved the use of a **Kubota Tractor**, and the use of a shop on the property, as well as, the installation of a **septic tank**, for plaintiff's travel trailer.

13. Officer **Barton Tokas**, was one of the officer's that responded to this ongoing **civil dispute** on or about **May 16 & 18, 2014...** At that time officer Tokas, informed the owner of the property, as well as, this plaintiff and his wife, that our dealings and issues were a **civil matter**, as such, officer Tokas instructed and informed each of[the parties to file a **civil complaint** with the District Court.

14. On or about **May 31, 2014...** The Ellsworth police were again called to 303 North Street, in reference to this ongoing **Civil Issue**...

(4)

14. Cont... The first officer on the scene that day was Officer **Troy Bires.** This officer was dispatched to an ongoing **civil dispute** by **911** operator according to the dispatch log.

15. Officer Bires arrived at the property around **8:25am,** then Officer Tokas arrived at the scene about **8:35am** ten minutes or so, later on **May 31, 2014.** Officer Bires and this plaintiff then discussed what was going on. Plaintiff explained briefly the situation and the ongoing **civil dispute,** between the owner and I, and that his fellow officer's had informed all parties that this was a **civil matter.** I informed officer Bires, that the owner of the **Kubota** tractor was trying to be underhanded in that he was not keeping his word and at that time trying to break our **Handshake/Contract** and **Verbal Agreement.** Having a spare key made to the tractor, and sending a person to attempt to take tractor off the property. Knowing full well the plaintiff used this tractor to position his travel trailer real close to the shop and needed this tractor to pull trailer out far enough, as to hook it up to the hitch on my truck when we were ready to leave the property.

16. I went on to explain to officer Bires, that the man that came to try and load tractor on his flat-bed trailer, assaulted plaintiff, by grabbing onto his forearm, when plaintiff was trying to retrieve the key and shut down the tractor. That plaintiff warned this person not to touch him as he reached into the cab to do so. And that after this person latched onto plaintiff's arm, plaintiff then pulled away real quick, then with his left hand plaintiff planted this person into the tractor seat at chest level pinning him and reached with his right hand grabbed the key, shutting down tractor and removing key.

(5)

17. Plaintiff had gone over said issue with officer Bires, which only took a few minutes to explain. Then officer Bires said, I'll be right back, I am going to speak with the owner of this property and the tractor inside his home. My wife and I, responded that's fine, we will be in the trailer grabbing our coffee's. Officer Bires, then went and talked to the owner.

18. It was about 8:30am by then, my wife and I went into our home, "Travel Trailer" to warm up our coffee's. Officer Bires, was not even in this gentleman's house no longer then one minute. He then banged on the back of our trailer real hard. It was so loud it startled my wife and I, and my service dog (Lady) then started barking. Plaintiff then went to the screen door, where the dog was. Plaintiff then grabbed his dog by the collar to hold on to her, before he opened the screen door. At that point, plaintiff just stuck his head out the door, holding the screen door with one hand and his dog with the other. He started to inform officer Bires, that we would be right out, that my wife was... That's all plaintiff spoke, before officer Bires pulled out his service weapon, and pointed it at plaintiff's head, screaming at him, show me your other hand right now, I then told my wife to grab the dog, that this officer was pointing his gun at my head. By the time my wife was able to grab onto Lady's collar, officers Bires screaming even louder, show me you F------ H--- now!!!

19. Plaintiff, then responded very calmly, easy, easy, I'm bringing my other hand out right now real slowly. My wife had hold of Lady-bug, by then and I slowly brought my hand out to show this officer, that I had nothing in my hand, I then even stepped down one stair exposing my whole body for him to see that I had no weapons on me...

(6)

19. Cont... Officer Bires at that time, continued pointing his gun at this plaintiff's head, threatening him, trying to intimidate this plaintiff. Officer Bires continued yelling at plaintiff with a real angry, aggressive voice, telling this plaintiff to give him the tractor key, Plaintiff responded, **NO**, I will not give you the key, I already explained to you that this was a **civil matter.** Officer Bires, then started screaming louder telling this plaintiff, that if you... don't give me that key, I will come into your home, I will get that key, and then I will arrest you for theft and assault. Officer Bires, still had his gun pointed at plaintiff, while making above threat.

20. At that point, this plaintiff became very angery, started yelling at this officer, asking him what his problem was. Plaintiff then stepped down to the ground, facing this officer, who was about fifteen (15) feet away at the back of plaintiff's travel trailer. Plaintiff, looking right into Officer Bires eye's and his gun,barrel, again said **"NO"** I will not give you the key, followed with... Do you think your gun scares me? Plaintiff then took his right index finger and placed it onto the middle of his forehead pointing, and at the same time, yelling take your best shot, F--- Y--, I will not give you the key, I told you this is a **civil matter.**

21. Officer Bires then realizing that I was not going to turn the key over to him, placed his weapon back into his holster. He then turned and started walking away, yelling back at this plaintiff, that he would be back. Plaintiff responded with great, until then go kick some rocks. At this point, this plaintiff was beyond angry, he was livid, he was seeing red, his common sense and mental capacity to see right from wrong was severely diminished. I turned and started to go back up the stairs of our travel trailer, when I looked down to...

(7)

21. Cont... the right and saw the five gallon can of gas sitting on the ground, I then picked it up and brought into the trailer with me. As I stated above, I was not thinking correctly at all at that point and time.

22. Plaintiff was not even back in the trailer more then one minute, when he heard his name being called out. Plaintiff, and his wife were very upset at this point. Plaintiff then went to the door to see who it was that was calling his name. He opened the screen door a crack, and stuck his head out to see who it was, and what they wanted. It was Officer Bart Tokas. Officer Tokas, could see that I was extremely upset at what had just transpired. I stated to Officer Tokas, did you not tell my wife and I this was a **civil issue.** He then replied yes I did, the last time I was out here a few weeks ago. He then followed this statement up with, I just arrived, I don't know what transpired between you and Officer Bires, other then you refused to relinquish the tractor key, I replied well I don't appreciate the fact that I was threatened with a gun pointed at my head for no reason. Officer Tokas then replied, look Jeff, you need to calm down and turn over the tractor key to me. I then became more upset at this reply, and said no, you told me this was a **civil matter,** which it is.

23. At this point Officer Tokas started to say... But I interrupted him and said look this is a **civil issue,** you instructed and informed, all parties to file of **civil complaint** on this issue. If Officer Bires wants to issue me a summons on what transpired today that's no problem, and if the Judge orders me to return this key to the owner I will do so. Officer Tokas then replied, that's not how it works, you need to hand over the key or you will be arrested. I, again became extremely insensitive at what was going on, and again...

23. Cont... became extremely livid at what was just spoken to me by Officer Tokas, again being threatened with arrest. This is when I picked up the gas can, that I had placed on the floor near the door. I then showed this gas can to Officer Tokas, saying I've told you, I'm not giving you the tractor key, and if you all try to come into my home and attempt taking it by force, I will use this to stop you. After stating this Officer Tokas replied, look you don't want to do this, all your going to accomplish is a police standoff, and it will not turn out good for you. At that point I just slammed the door. This ineptitude behavior from both these  officer's and this plaintiff, resulted in a police standoff for the next twenty (20) hours, ending with this plaintiff being shot in the head/face by a Maine State Tactical Police Officer, who's name was **Scott Duff**.

24. On **June 1, 2014** at about **4:20am**... This plaintiff was unlaw-fully shot in the head, by Maine State Trooper Scott Duff. Both the plaintiff and his wife were placed into a very dangerous, perilous and risky life threatening situation, by State of Maine law enforcement... officer's. Plaintiff and his wife were both threatened and attacked during the twenty hours. We were assaulted and attacked by numerous law enforcement officer's while in the confines of our home, without showing any provocation toward these officer's until after they shot into our trailer, threw rocks at trailer, tried breaking window with a robot, and finally used an armored vehicle to penetrate and push our trailer. It was only after these attacks did plaintiff retaliate.

25. This plaintiff yelled outside his window, several times dur-ing this standoff, that he did not want anyone to be harmed or hurt. There were numerous mitigating factors as to why this occurred, and this plaintiff firmly believes that this whole incident could have...

(9)

25. Cont... been avoided and defused by those individuals whom were in supervisory positions, along with those whom were in command, could have brought this whole incident to a peaceful conclusion. Yet, this in not what they wanted to happen. Instead they allowed several of their officer's to continue instigating the situation, and not allowing cooler heads to prevail. Plaintiff, also relayed and informed, to those whom were in charge, that this could all end peacefully if he was allowed to turn over a C/D to the media and make a statement to a reporter, as to why this was all happening. Plaintiff was flat out denied this simple request, as to bring situation to a proper and safe conclusion. As such, those whom were in authority that day,(The defendants mentioned above in this complaint) should be held accountable for their subordinates actions, and for their serious lack of discretion, to allow this situation to progress to the point it did, which was very dangerous for all in concern, and ending with grave harm to this plaintiff. This plaintiff, has taken responsibility for his action, has been incarcerated for over two years now, and suffers with severe ongoing pain, both physical and emotional, that he will most likely deal with for the rest of his life, do to being shot in the head unnecessarily and unlawfully with malicious intent.

26. Now this plaintiff is seeking redress from this Honorable Court, in the venue of this **civil complain**t, requesting that this Honorable Court, administer justice to those defendants, whom have been completely dishonest in regards to how this incident concluded with this plaintiff being shot in the head, severely wounding him. Plaintiff, firmly believes that those whom were in authority, along with their subordinates, need to be held accountable for their actions, and their perceptions, that they are above the law. So this...

26. Cont... kind of situation, or incident will not be repeated allowing others to be fatally wounded as I was. Again this plaintiff, humbly seeks redress from this Honorable Court in this civil action.

27. After spending thirteen (13) days in an induced coma, and eighteen (18) days in the Intensive Care Unit at Eastern Maine Medical Center, this plaintiff was released from the hospital under false pre-tenses. Before he could seek further medical care as instructed by the surgeons and doctors in charge of his care,(that this plaintiff should seek, without delay down in Portland, Maine at Maine Medical Center or down in Boston, because all the surgeries that were performed up to that point were life sustaining only, and what needed to be done now, was beyond the expertise of these doctors, as to the continued recon-struction of plaintiff's jaw, eye and face after being shot in head.) this plaintiff was detained by Bangor Police, ( It appeared that someone had called them ) before even leaving the hospital. Plaintiff was then taken to Penobscot County Jail, where he was then picked up by Hancock County Jail corrections officer, who then transported him to Hancock County Jail, where plaintiff was informed that the United States Mar-shal's office and the Federal Government had placed a hold on me and I was being detained. This was on **June 18, 2014.** On or about **July 27, 2014...** this plaintiff was transferred again to Somerset County Jail because of his medical condition and multiple medical issues after being shot in the head on **June 1, 2014...** plaintiff is a amputee as well, and had been having problems with his prosthesis before being shot, and his prosthetic limb was also damaged during said incident, and now needed extensive repairs, with a knew fiber glass socket being made which would cost $6,000.00 dollars to replace. Plaintiff was exp-erienceing severe pain, from the cumulative ulcers on his stump.

28. Plaintiff had started the process of having his prosthesis repaired two weeks before being shot. As stated above prosthesis was damaged further during the police standoff. Plaintiff's wife retrieved his prosthetic limb from our home and gave it to my clinician at Central Maine Orthodics. Plaintiff's clinician repaired my prosthesis as best as he could, and brought it to the hospital for me. He then explained that he did the best he could to manipulate and repair the socket, and told me to wear it, in conjunction with using my walker, and if I had any problems, contact him for an appointment. Within a few days, while at Hancock County Jail, I started getting real painful cumulative ulcers. I then asked for an appointment to be set up with my outside clinician, this was scheduled, but the jail and or marshal's did not take me to the appointment. This was around middle of **July 2014**... when speaking with my wife on the phone that week, I was informed by her that my clinician was not to happy, because the appointment that was made, was made for the Bangor office, and he had set this time aside just for me and traveled all the way to Bangor, from his Portland office that day. The central office is in Waterville, were he normally works out of, but on that day he was down at their Portland office in the morning and had my special appointment for in the afternoon, and no one called him to cancel this appointment.

29. After plaintiff's transfer to Somerset County Jail, another appointment was set, I made it to that one. After that I went back to my clinician in the Waterville office, three (3) times before he finally recommended a new socket to be made this was in **January 2015.** At that time, I asked him why he did not recommend this sooner. He said, I was informed that a new socket would not be paid for by this jail. This plaintiff, then asked his clinician to take a casting of his...

(12)

29. Cont... stump, which he did. This plaintiff then explained to his clinician that he would seek approval from the Marshal's and he would have a new appointment set up after this socket was approved to be made. Plaintiff then returned to the jail, where he submitted a medical slip to find out what was going on. Plaintiff was informed at that time, that the Feds would not pay for my socket to be made. Both the Assistant Health Administrator of Somerset County Jail and the owner of MED-PRO **Terry Thurlow**, as well as, the P.A. Greg Ellis informed plaintiff of this. Plaintiff then asked if this was in writing he was told it was not. Plaintiff, then filed level one (1) grievance on this issue. He was then informed that we were waiting for approval for the socket from the Marshal's office.

30. Plaintiffs ulcers started to get real painful and he then at that time filed another level one (1) grievance on getting a wheelchair or the walker he came into the jail with, that he needed this so he could remove his prosthesis to allow his sores to heal. This was around **February 2015.** Defendants then denied this, so he submitted two level two(2) grievances on above issue. He was then informed by the Compliance Manager, **Sean Maguire**, that we were still waiting for approval from the feds. But he still denied me to have a wheelchair or walker in my cell to allow me to take off my prosthetic limb, to allow my sores to heal, and allowing the mobility I needed. At one point, I was told to hop around by C.M., Capt. Maguire. He said I was not getting my walker or a wheelchair. This was in writing.

31. Then about mid **February 2015...** plaintiff was informed that prosthetic socket was not approved by the Marshal's office. This was given to me on a Memo from C.M. Maguire, along with these options... #1. I could continue wearing my prosthetic limb. #2. Or I could have...

(13)

31. Cont... wheelchair or an aluminum walker out side my cell. But I would have to place my prosthesis on my property for it to be held until such a time the socket could be fixed. I chose number one. I said to myself, I will get my court appointed attorney to help me with this. Which I had already sent out a letter on this issue to my counselor **Mr. Jeffrey Silverstien**. I tried to keep my prosthesis off as much as possible, but that did not help, the ulcers only became worse and very much more painful.

32. Plaintiff tried and tried to have his appointed counsel help him with this issue, which he refused to do. I sent Mr. Silverstein, numerous letter's from middle of **2014** through **2015**. When I could see that he was not going to help me. I asked this court for a new attorney, and I was appointed Bruce Merrill. Even Mr. Merrill refused to get the help I needed with my prosthesis, and I still have not received it. I've tried to get the proper medical care on this issue for over two years now, and have received nothing but delays.

33. This plaintiff kept trying to request a wheelchair or his walker in his cell, and kept getting refused. Then I started stating to jail staff, that if my sores on my leg got infected, and my MRSA kicked in, I would not let them take anymore of my leg. Still I was refused the tools I needed to allow me to take off my prosthesis and to allow my sores to heal, and then use walker or wheelchair in conjunction with my prosthesis, after the sores healed so atrophy would not affect my muscles in my thigh. This plaintiff now has serious, no very serious atrophy, painful muscle spasms and cramps, he has severe back and hip pain, and still has NOT received the proper medical care on issue, as of the date of this motion **July 2016.**

34. On or about **March 26, 2015...** Plaintiff was attacked by five corrections officers, in reference to taking plaintiff's prosthetic···

(14)

34. Cont... limb by force. Plaintiff can only identify two of the five officers at this time. C/O **Eric Jacques** and C/O **Jacob Roy,** As well as, the shift leader Sgt. **Dawn Pullen.** Others who were involved in this were P.A. **Greg Ellis,** M/H. Counselor **Dave Needham,** and compliance manager Capt. **Sean Maguire.** Capt. Maguire was the person in charge of situation. The **C.E.R.T.,** team of five officer's came into my cell shielded me up against back wall in the cell, I was then slammed to the floor, and my prosthetic limb was ripped off my stump. And the same time they took my orthopedic shoe, and stripped all my clothes of me. They then took all my belongings out of my self, legal work, hygiene supplies, blankets and sheets. I was given a security smock only, with no security blanket. It was freezing cold. There was five to six feet of snow on the outer wall of my cell, I asked C/O **Charles Haley** over and over for a blanket for two hours, this officer would not give me a security blanket to help me stop shivering. I became so distraught that I climbed up onto the shelf that was 59" off the ground and dropped right on my head. My prosthesis was taken unlawfully. I was trying to get the help that I needed for several months, and was refused the proper medical care.

35. On or about **March 12, 2015...** I was physically assaulted by officer **Charles Haley.** This officer pulled my arm through the cuff board and injured my left forearm cutting/open. This was done because this officer was retaliating against me for writing a grievance on him for threatening me with pepper spray, throwing a chair across the room trying to intimidate me. This officer also dumped my lunch on my cuff board with no napkin exposing the open food to the dirty metal. He then slammed the cuff board and my food went all over the floor in my cell. I filed grievances on this officer, he then assaulted me.

(15)

36. This plaintiff has been verbally assaulted and belittled on numerous occasions, as well as, his disability being made fun of. Plaintiff has been exposed to the the following derogatory statements, ridicule and emotional abuse, that is still ongoing, since his arrival back in **July 2014**... Plaintiff has most if not all dates and times of this abuse, he has also filed and exhausted all his administrative remedies on most if not all misconduct of said officer's. The following comments and actions were perpetrated upon this plaintiff in the past two years... C/O **Charles Haley** said these comments to this plaintiff. " Your just a jerk ", " Your a real A-- H----", " You just think your so **special**", this was said in a very condescending and derogatory manner. Then this officer went around to several other corrections officer's and had them start saying this all [the] time, over and over, " Your Special "," Your just so special " Infact it is still happening on occasion now. This officer, I believe also spit in my sandwich, I wrote this up but nothing was done. I tried to have a supervisor come down to look at the sandwich, but this officer re-fused to call a supervisor. C/O **Gerald Madore**, blurted out comments such as " Your just a loser ", " You sure are a f------ A------." or " You don't even deserve the air we breath in here " and " Your no... better then these child molesters we have in here ", or"Hurry up kimp", " Lets go stumpy " and " You don't have a leg to stand on anymore do ya". This officer also brought me my food tray into my cell, and as he was sitting it down on the bunk, he made a fart sound with his mouth, he had stuck his tongue out between his lips, and made this farting sound and his saliva sprayed all over my food. I asked to speak to supervisor in charge that day, and asked for a new meal, and was denied both. This officer dose this to everyone, he downgrades inmates all the time.

36. Cont... This last comment was directed toward me, after I respectfully requested to call my wife for two days, she was going through an 8½ hour surgery on her legs, because of blood clots. I asked several times dealing with two different shift leaders. I had even put it in written form through inmate request procedure. What I received was this comment from C/O **Mike rizzo**, "Your not getting a call to your wife, she's probably dead already anyway." I will conclude with this, I've been threatened to be killed and beat up by three separate corrections officer's, two of these officer's are no longer working here, one still is, can I prove this? Yes I can if the ones who made these threats when confronted were honest, but I will not hold my breath.

### V. Misuse of Force and Deadly/Lethal Force

37. On or about **June 1, 2014**... this plaintiff suffered a fatal injury, when he was shot in the head by Maine State Law Enforcement. Plaintiff firmly believes, this was unjust and unlawful, as to how it went down. This was, and had been a **civil issue** for several weeks prior to plaintiff being shot in the head. This was well documented in police reports, and 911 was called and dispatched Ellsworth, P.D., to a ongoing **civil dispute.** Plaintiff contends that most if not all parties knew in advance that this was a **civil matter**, yet the responding officer that day turned the situation into a criminal matter on purpose, well knowing plaintiff's back ground and record. Plaintiff, further contends, that those whom were in supervisory positions at the scene that day, allowed things to get out of hand, and even instigated the whole situation in their actions toward this plaintiff and his wife. Plaintiff firmly believes there was a conspiracy going on behind the scene, and long before the day he was shot in the head. Furthermore...

(17)

37. Cont... Plaintiff also alleges that this conspiracy went very high up in the ranks of law enforcement as well as, other... governmental agencies, and this plaintiff has some proof that may in effect prove this allegation. As such, plaintiff firmly believes that all individuals mentioned above in reference to plaintiff being shot in the head, should be held accountable in their individual, as well as, professional capacities. Defendants are as follows... State of Maine, Attorney General Janett Mills: Maine State Police, Colonel Robert Williams, Trooper Scott Duff: City of Ellsworth, City Manager John Doe: Ellsworth Police Department, Chief of Police John Doe, Lieutenant Harold Page, officer's Troy Bires and Barton Tokas: Hancock County Sheriff John Doe, Deputies Frost and Campbell: City of Bangor, Manager John Doe: Bangor Police Department, Sergant Rob Angelo. And any other individual that is employed by above agencies, that may be found out or exposed during the investigation of this case.

38. On or about, **March 12, 2015**... this plaintiff was assaulted by correctional officer **Charles Haley**, he maliciously and intention- ally pulled and yanked this plaintiff's arm through the cuff board of his cell #107 A-Pod. This plaintiff received a deep laceration on his arm that required medical attention. Plaintiff received medical attention a photo was taken and medical report completed. Plaintiff did nothing to deserve this, and followed orders as given. Officer Haley, told this plaintiff to put his arms out on the cuff board, I followed these instructions, C/O Haley then took of my right hand- cuff, and instructed me to place my right hand on top of my head. I complied, C/O Haley, then yanked my left arm real hard, while I was still cuffed. He twisted my wrist, then pulled my arm out with so...

(18)

38. Cont... much force, my arm hit top of the cuff board that caused a deep cut on the inside of my forearm, right where the bend of the elbow is located. Officer Haley, did this with deliberate in-ent and in retaliation to this plaintiff filing several grievances in regards to this officers misconduct, in that he tried to intimidate this plaintiff by throwing a chair across the room, then he threatened to spray pepper spray into plaintiff's face, this was over a shower chair issue, and the fact I was and had been allowed two chairs to sit on do to my disability, in that I am a amputee. In another incident as to this officer, C/O Haley took my food and dumped it on the cuff boards metal grate, with no napkin exposing the food to a dirty surface, then he slammed the cuff board send my food all over my cell. As I stated above this officer assaulted me in retaliation to my grievances against him, furthermore there was another C/O that witnessed this assault and did nothing to intervene. Her name was **Margerett Kelly.**

39. On or about **March 26, 2015...** this plaintiff was attacked by five officer's. A **C.E.R.T.** team was sent into my cell, I was shielded to the ground and my prosthetic limb was ripped off my stump. There are many other issues with abuse from staff members... One example is that this plaintiff had just had eye surgery, he was brought back that same day and was put into his cell. Plaintiffs head was pounding so bad, he placed it under the covers. Then C/O **Nicholas Rotondi,** grabbed this plaintiff blanket ripping it off plaintiffs body, at the same time my bandages on my eye were ripped off my eye as well. This officer knew that this plaintiff had just had eye surgery just a few hours before. There are many other incidents of abuse and harassment and dishonesty toward not only this plaintiff, but many other inmates at this facility.

(19)

39. Cont... Plaintiff will not mention every incident that has transpired in this facility in just over two years between himself and jail staff, and how plaintiff is instigated, harassed, and made fun of, or the outright dishonesty of jail staff, and their tactics toward inmates, how they belittle, ridicule and degrade inmates, to get them to misbehave, and then punish them. I just would like this Honorable Court to be aware of these facts and that this plaintiff would only be using this evidence to prove his case during litigation or trial. All reasons above, as to this jail and the medical issues I will mention below as to the misconduct of contracted medical staff employed by MED-PRO & Associates and this jail staff's misconduct has been brought to the attention of the jail administrator and sheriff in numerous in house Memos and E-Mails. This plaintiff has many of these memos, as such, plaintiff firmly believes that all individuals mention-ed above and below, as it pertains to this jail facility, should be held accountable in their individual, as well as, their official capa-cities. These individuals are as follows... Somerset County Sheriff, Dale Lancaster, Jail Administrator, Corey Swope, A.J.A. Captain Sean Maguire, Health Service Administrator, Terry Thurlow, Sgt, Dawn Pullen, correctional officer's, Gerald Madore, Charles Haley, Mike Rizzo, Jacob Roy, Eric Jacques. And again, any other individual that may be brought up or out, during any investigation that may occur, in regards to this case.

## VI. Denial of Due Process

40. This plaintiff was placed into administrative segregation over two years ago, back in **September 2014.** Due to his medical and mental health conditions. After his prosthesis was taken by force back in **March 2015.** The classification review board has denied...

40. Cont... this plaintiff the right to be released from being on administrative segregation, because this plaintiff has restrictions. Yet the only restriction this plaintiff has is medical, which deals with his prosthetic limb, that was unlawfully taken by force through dishonest means without any medical justification. Plaintiff has appealed this unlawful action on two separate occasions to the Jail Administator, and still, plaintiff has been denied to be taken out of solitary confinement, and out of a cell that is monitored by camera 24-7. The cell that this plaintiff is in at this time has no desk, table, chair, or shelve with hooks to hang your wet towels and wash cloth on. This cell AH-116 is not handi-cap accessible, which makes it very difficult for this plaintiff's disability, in that I must lean on the walls without supporting rails for balance, which is very hard on my hip and lower back. The AD-SEG classification committee meets once a month, and this plaintiff sees mental health before every meeting. Plaintiff was told over seven months ago that he has been cleared, yet at my last hearing July 2016, I was informed that I still had not been cleared by mental health for general population, and even if I had been I would still remain on administrative segregation because I have restrictions, which the only restriction I have is not having my prosthetic limb. This plaintiff's disibility is being used to keep him in AD-SEG, this is serious discrimination against plaintiff's disability. Another good example of this ongoing discrimination upon this plaintiff would be the fact that He had to go nineteen (19) days without a shower in order to receive a proper shower chair, so plaintiff could take a shower, without being injured by slipping. Plaintiff, respectfully requested this shower chair in writing for about eight (8) months before he received one, but...

40. Cont... only after a new mental health counselor requested from this jail administration for me to receive a proper shower chair. This plaintiff, tried every avenue he could to get help for his disability issues, as to being an amputee. He filed all proper paperwork both medical, as well as, administrative remedies, he even ask both of his court appointed attorney's to assist him with injunctive relief as to his walker, or a wheelchair to assist his disability with proper mobility tools, he was denied this proper help from all parties. Instead what plaintiff received was different forms of harassment, in the form of excessive cell searches trashing his cell, going through his legal work out of plaintiff's presence, when he went to doctors appointments, and confiscating his legal work and holding for weeks at a time, without sealing it in plaintiff's presence before removing it from plaintiff possession. Plaintiff was also subjected to serious verbal abuse, teasing and making fun of his disability, with comments from officer's such as this... "You don't have a leg to stand on anymore, do ya " after plaintiff's prosthetic limb was taken unlawfully from him. Plaintiff, responded to this comment with " Look I don't have a wheelchair to roll around in now do I " as plaintiff then picked up wheelchair and through to the ground breaking it. Plaintiff's Due Process Rights have been severely violated, not only with his AD-SEG situation, but this plaintiff was not allowed to call witnesses at several of his disciplinary hearings, as to allow him the right to question those officer's who wrote him up, or witnesses that would testify on plaintiff's behalf. He was told by two different D/Os that this was the jails policy.

### VII. Exhaustion of Administrative Remedies

41. Plaintiff has exhausted his administrative remedies with respect to all claims and defendants...

(22)

## VIII. Denial and Delay of Proper Medical Care

42. Plaintiff arrived at this facility in **July 2014.** He was transferred to Somerset County Jail, because of his medical condition from being shot in the head/face and his disability, being that he is an amputee, and he needed his prosthetic limb fixed.

43. Plaintiff's medical care has been out right denied, and or delayed to such an extent, that he has suffered unnecessary pain, and he will now, on information and belief suffer permanent disability do to theses excessive delays and denials of proper and prompt medical care.

44. Plaintiff, came to this facility walking with his prosthesis and now has been in a wheelchair for over a year, because the Marshal services would not approve for a new socket to be made. The reason for this is that it cost $6,000.00 dollars to make this socket.

45. Both the Marshal's and defendants have exasperated plaintiff's medical condition and have caused this plaintiff severe pain because they failed to follow the medical orders of plaintiff's clinician at Central Maine Orthodics.

46. Plaintiff waited over eight months before receiving the recommended surgery that was needed to protect his eye. On information and belief, plaintiff will now suffer permanent damage in his left eye, because of theses delay's.

47. Plaintiff waited over over eighteen (18) months to receive the needed operation on his jaw, which was just performed this year in **March 2016.** That was the first phase, recommended by Dr. Oreadi, down in Boston, at Tuft's University and Medical Hospital. The Health Service Administrator from this jail and the owner of MED-PRO and...

(23)

47. Cont... Associates, **Terry Thurlow**, caused this plaintiff serious pain and discomfort, when he interfered with my medical treatment on the first phase of surgeries to fix my jaw, as it was recommended by Dr. Oreadi. After a five and a half hour operation, it was recommended by my doctor to stay in the hospital over night. Mr. Thurlow called down to the hospital throwing his title around, which then resulted in me being transported back to the jail. The transport van did not even make it out of Boston, before I became deathly ill, and started throwing up blood in the back of the van. I threw up four separate times so violently that I tore the muscles on my rib cage. I then sat in my own bloody vomit for the three and half hour drive back to Somerset County Jail.

48. Plaintiff submitted a medical slip, as to explain to the P.A. **Greg Ellis**, how severe the pain was in his jaw, and that the medication he was giving was and still is very in affective with dealing with my jaw pain. Mr. Ellis then replied to this with, that's what happens when you get shot in the head.

49. Now that plaintiff, has been over a year without his Prosthetic limb, he's now suffering with a severe case of atrophy. His thigh muscle and stump have lost so much mass it will now require two sockets to be made, and four to six months to rebuild my muscles. It will be very painful, as it stands now, plaintiff is dealing with... severe muscle cramps and spasms that are very painful.

50. This plaintiff's medication has been wrong when given to him at medication pass, around seven or eight times. Plaintiff was flat out denied his medication at least five times by Nurse **Lisa Cates**. Plaintiff, was never given his afternoon medication when at court...

50. Cont... At one med-pass, plaintiff did not catch that he was given medication that was not his, this caused plaintiff to become very ill, and plaintiff then fell asleep. When he woke up the next day he was still very groggy for the whole day. Plaintiff then informed medical staff, he was told that if your not dead, you will be fine. Plaintiff believes this nurses name was **Laurie V**. She no longer works here. This was mentioned in plaintiff's medical file.

51. The P.A. Greg Ellis, kept stalling me to get my Jaw fixed, sending me, or trying to send me to a regular dentist to have some bad teeth pulled. When he finally realized that I needed a specialist because, I told him I did from the start, and refused to waste time going to regular dentist. He sent me to a specialist that attempted to pull my five bad teeth with novocain only,which was not going to happen. This doctor, then wrote a report and recommended that Tuft's down in Boston, would be able to pull my teeth and fix my jaw at the same time. Because P.A. Greg Ellis, would not listen to a referral of Dr. Kahn, the specialist that did the operation on my eye, and because P. A. Ellis, refused to refer plaintiff to the specialist he recommended, this plaintiff, suffered with excruciating pain in his jaw for way longer then necessary.

52. P.A. **Greg Ellis**, kept saying things to plaintiff, like... You know how we play the game, you submit numerous medical slips, complaining of pain and that you think you have an infection in your jaw or mouth, then I prescribe anti-biotics to satisfy you. Or P.A Ellis said, this on several visits, I don't think your in pain, your just seeking narcotics. This plaintiff kept on submitting inmate medical slips and filed grievances on this P.A., yet he continued stalling my needed medical care in many different ways, like let's get your eye operation...

(25)

52. Cont... completed  and your prosthesis issue worked out, then we will work on your jaw issue. I asked him why we needed to wait until these things were completed, that I was in severe pain in my jaw. P.A. Ellis, replied because that's the way we do things. P.A. Ellis, was always sarcastic and condemning this plaintiff.

53. This plaintiff has been requesting to be seen by mental health and to work with this plaintiff, on severe pain issues, which cause anger issues, he asked to have steady counseling and was told there was not enough mental health staff.

54. When plaintiff first arrived at this facility back in July 2014, the medical department knew how serious plaintiff's medical conditions were, yet, H.S.A., Terry Thurlow, P.A. Ellis and this administration to this jail, did all they could to stall and delay or [right><out] deny, this plaintiff the proper, prompt medical care that he needed the whole time leaving this plaintiff in great pain.

55. Infact this plaintiff had another appointment set up with Dr. Oreadi, down in Boston, at Tuft's this week. **July 19, 2016.** It was set for 9:00am. Plaintiff was brought out to booking/intake at 4:30am. the transport officer did not get to the jail until around 5:00am. Plaintiff's, breakfast was not ready, plaintiff lunch was not made up, and plaintiff's medication was not ready. At about this time the transport officer Deputy Travis Andrews, said we need to get going. I asked him if he was given my medication, he said no. He then said you have a chose, we can leave now, and you can eat some of your lunch on the way down,"which was not even made up yet" or you can stay here. This plaintiff then said, he was not going all day long without out his pain medication, and that he would like to have break-fast before he left. Plaintiff then asked this Deputy what time his...

(26)

55. Cont... appointment was? Deputy Andrews, replied when we get there. I then requested to be taken back to my cell to lay down, until the medical staff arrived at 6:00am to give me my medication. At about 6:05am, corrections officer Hanson, came to my cell, and said are you ready to try this again. I said yes, and plaintiff was then escorted back down to intake/booking where he was given his morning medication by Nurse Brian Hunter. Plaintiff, then still had to wait for his lunch and breakfast, which was given to him around 6:15am. This plaintiff, then ate his breakfast real fast, and we were on the road heading to my appointment in Boston by 6:25am. Before we arrived at interstate 95, Deputy Andrews had to stop to fill up with gas. This took another ten minutes, by the time he filled up and obtained his coffee. It was now around 6:50am. I then again asked Deputy Andrews, what time my appoint- ment was set for. He then replied 9:00am. I replied we will never make it to my appointment on time with morning traffic. I was then told not to worry about it. We made it to the Boarder of Vermont/Mass. before receiving a call from the jail to turn around, that my appointment was canceled, because we were late, we then turned around and headed back to the jail. We were on the road for 5 hours for nothing. What was very upsetting, is that this had happened before, and we ended up being late by 25 minutes, yet this doctor, still allowed me to be seen. This jail also dropped the ball on another doctors appointment that they forgot to take me to, and this appointment needed to be rescheduled. This jail is fully aware that it takes 3½ hours minimum to reach Boston and that is if there is no traffic. Then finding parking spot, and getting up to the fith floor, all takes another 15-20 minutes. So even if we left the jail at 5:00am. we would not have made my appointment at 9:00am.

56. When we arrived back at the jail, this plaintiff, asked...

(27)

56. Cont... if his appointment was going to be rescheduled, he was told to fill out another medical slip. Plaintiff, did this and filed a level one grievance with the administration on this issue. The next day, plaintiff was informed that his appointment would not be rescheduled at this time. The answer he received was that, this plaintiff, had the chose to leave and get to this appointment on-time. Yet, I chose to wait around for my medication. Indicating that this was my fault. This was from nurse shelia, in writing responding to my medical slip. Plaintiff, was also told by Capt. Maguire that, the Feds now needed to approve another appointment. I then spoke to compliance manager Teshia Cates, whom I submitted my level one griev-ance to. I asked her why we needed to wait for the Feds to approve something that has already been proved? That this was what was told me by Capt. Maguire. Ms. Cates, replied with, that's a good question. I will find out and inform you in writing on your level one grievance you submitted to me. This was just yesterday, July 21, 2016. I still have not received response. Then today, I again tried speaking with capt. Maguire, asking him this same question? He said nothing, turned and walked away. It appeared he was not in a good mood. Plaintiff has, and is in great pain, he has been denied and has had to endure very long delays to receive proper medical care. He was told on several occasions, by P.A. Ellis, Nurse Lisa Cates, H.S.A. Terry thurlow and Capt. Sean Maguire, that I would receive the proper medical care when I get to the Federal Bureau of Prisons. These defendants, including the United States Marshal's Service, delayed and denied this plaint-iff's medical attention intentionally, they allowed this plaintiff, and still are, to suffer with excruciating pain. This plaintiff, was a pretrial inmate, and he was considered guilty by above defendants...

(28)

56. Cont... and the Marshal's Service, just by their comments about plaintiff being convicted and going into the F.B.O.P. This plaintiff was and still is suffering from extreme acute, as well as, severe chronic pain, he should not have to wait and suffer while his criminal case was being litigated. Plaintiff seeks the following...

### IX. Claims for Relief

57. The actions, or lack there of, by defendants mentioned in this amended complaint, in using excessive force and deadly force against this plaintiff, without need or provocation, or in failing to intervene to prevent the misuse of force, were done maliciously, sadistically, intentionally, and in retaliation, which was and still is being perpetrated upon this plaintiff, constitutes cruel and un-usual punishment in violation of the Fourth and Eighth amendment of the United States Constitution.

58. The actions of defendants mentioned above in this amended complaint, in using excessive physical force against ths plaintiff without need or provocation constituted the tort of assault and battery under the laws of the State of Maine.

59. The failure of defendants mentioned above in this amended complaint, to intervene or to take disciplinary action, and or pro-per training of their subordinates, to curb improper behavior and known patterns of verbal, physical abuse, or the lack of proper training, toward this plaintiff in relation to this case, other in-mates, or citizens at large, contributed to and proximately caused the above-described violation of Fourth and Eighth Amendment rights, as well as, assault and battery under tort laws.

60. The actions of above mentioned defendants in this amended complaint in keeping plaintiff in administrative segregation do to...

(29)

60. Cont... his medical condition, his appeals being denied, and his right to call witnesses to disciplinary hearings, and the adverse affect this has had on plaintiff's incarceration, denies plaintiff, Due Process of Law in violation of the Fourteenth Amendment to the United States Constitution.

61. The failure of defendants mentioned above in this amended complaint, to provide proper medical care, without long delays and out right denial of prescribed and recommended medical care by the plaintiff's doctors and clinician for his prosthetic limb, and the intentional interference of plaintiffs medical care, constitutes deliberate indifference to the plaintiff's serious medical needs, which is a direct violation of the Eighth Amendment to the United States Constitution, as to cruel and unusual punishment.

62. The failure of defendants mentioned above in this amended complaint to follow the prescribed recommendations of plaintiff's doctor's and prosthesis clinician, as to replace his socket and not to interfere with his medical treatment, constitutes the tort of negligence under State of Maine tort laws.

### X. Relief Requested

WHEREFORE, plaintiff respectfully requests that this Honorable...

Court **grant** the following relief...

A. Issue a declaratory judgment that:

1. The physical and emotional abuse of the plaintiff, by defendants mentioned above in this amended complaint, violated this plaintiff's rights to be free from excessive force and cruel and unusual punishment under the Fourth and Eighth Amendments to the United States Constitution, as well as, constituted an assault and battery under State of Maine Tort law.

(30)

A. Cont...

2. That those defendants mentioned above in this amended complaint that were supervisory or administrative authority be held responsible for their failure to properly train and curb the physical abuse of this plaintiff and other inmates, which violated plaintiff's Fourth and Eighth Amendments to the United States Constitution and constituted an assault and battery under State of Maine tort laws.

3. Defendants and their actions mentioned above in this amended complaint in conducting plaintiff's administrative segregation issues and his rights to uphold in the appeals process, as well as his rights to call witnesses on his behalf at D-Board hearings, and that above defendants used their positions to sustain and keep plaintiff on AD-SEG over two years which has violated plaintiff's rights under Due Process Clause of the Fourteenth Amendment to the United States Constitution.

4. Defendants and their actions mentioned above in this amended complaint, and or their lack of action in providing adequate medical care for plaintiff violated, and continues to violate the plaintiff's rights under the Eighth Amendment to the United States Constitution.

B. Issue an injunction ordering Marshal's, defendants, or their agents to

1. Immediately arrange for plaintiff's prosthetic socket to be made, and to follow the instructions of his clinician, as to process, in allowing two sockets to be made if needed, and to follow all the physical therapy, orders as well.

2. Immediately arrange for the plaintiff to be seen by an orthopedic surgeon, to address plaintiffs needs, and to evaluate plaintiff in his present condition, and any medical procedures that may help to recover, and to access any permanent damage that has occurred, because plaintiff has been without his prosthetic limb for over a year now.

3. Immediately reschedule missed appointment with Dr. Oreadi, at Tuft's Hospital in Boston, to allow him to proceed with his recommend-

B. Cont...

    3. Cont... ation and to follow through with the next phase as is needed to fix plaintiff's jaw, with the proper reconstruction, as to alleviate plaintiff's acute pain and not allow further damage to plaintiff's jaw and gums.

    4. To have defendants and Marshal's, follow all Dr. Oreadi's orders, as to any medical treatment, physical Therapy, or medications prescribed.

    5. And, an injunction ordering the Marshal's, or defendants above, such as Health Service Administrator, **Terry Thurlow**, Capt. **Sean Maguire**, or Major, **Corey Swope**, not to interfere with the orders, recommendations or medical treatment prescribed by plaintiff's outside healthcare providers, this would also include P.A. **Greg Ellis** who works for the jail.

C. Issue an injunction ordering, Sheriff Dale Lancaster, Major Corey swope, Jail Administrator, or any other defendant mentioned above that may be involved to,

    1. Expunge plaintiff's disciplinary convictions/record, being as plaintiff's behavior, was a direct result of lack of proper medical care, long term delay's in proper medical care, and the out-right denial of proper medical treatment, as well as mental health care. Furthermore, the down right harassment and misconduct of correctional staff and the contracted medical staff, exasperated plaintiff's physical and emotional well being, resulting in plaintaiff's improper behavior. ( Plaintiff in no way condones his improper behavior, just stating the facts...)

    2. Release plaintiff off administrative segregation, and place him back into general population with all right and privileges restored.

    3. Immediately order an injunction to bring plaintiff's inmate account down to -0- balance. Because the negative-$9,000.00 plus dollars were directly a result of improper medical and mental health treatment. About $7,000.00 plus dollars are for medical bills.

D. Award compensatory damages in the following amounts:

1. $1,000,000.00/One Million dollars jointly and severally against defendants, Janett Mills, Robert Williams, Scott Duff, Harold Page,... Troy Bires, Barton Tokas, Rob Angelo, Deputies Frost & Campbell, and all three John Does mentioned above in caption. This would also apply to any other individual that may be brought out, up or forth in the process of investigation of this case, for the physical and emotional injuries that were sustained as a result of this plaintiff being shot in the head/face.

2. $500,000.00/Five Hundred Thousand dollars, jointly and severally, against defendants, Janett Mills, Terry Thurlow, Greg Ellis, Lisa Cates, Dale Lancaster, Corey Swope, Sean Maguire, for physical and emotional injuries resulting from out right denial and long term delay's of, and failure to provide proper and adequate medical and mental health care to this plaintiff, without deliberate and unnecessary delay's and denial:

3. $100,000.00/One Hundred Thousand dollars, jointly and severally, against defendants, Janett Mills, Dale Lancaster, Corey Swope, Terry... Thurlow, Sean Maguire, Greg Ellis, Dave Needham, Dawn Pullen, Charles... Haley, Jacob Roy, Eric Jacques, Gerald Madore, and or any other individual, that may be brought forth in the normal investigation of this case, as to this plaintiff, being attacked, physically assaulted, verbally... assaulted, in reference to his disability, as well as, punishments, the deprivation of liberty and amenities, resulting from plaintiff's medical condition, which has caused plaintiff, severe emotional damage and injuries resulting in, or from loss or denial of plaintiff's Due Process Rights in connection with plaintiff's administrative segregation and or disciplinary hearings, as well as plaintiff's appeals processes.

E. Damage demand for segregated confinement reflecting Prison Liti...

(33)

E. Cont... gation Reform Act, (P.L.R.A.), Award compensatory damages jointly and severally against the following defendants $100,000.00, One Hundred Thousand and $50,000.00, fifty Thousand dollars respectfully.

    1. Defendants, Dale Lancaster, Corey Swope, Sean Maguire, Terry... Thurlow, Greg Ellis, Lisa Cates, Dave Needham, and or, any other individual that might be brought forth, during the normal course of an investigation that may be started in this case, for the physical and emotional injuries sustained as a direct result of plaintiff being attacked, along with physical and verbal assault, as a result of plaintiff's disability.

    2. Defendants, Dale Lancater, Corey Swope, Sean Maguire, Darlena... Bugbee, and all classification staff that serve under Sgt. Bugbee, as to this plaintiff's punishment, and emotional injury resulting from the on-going deniel of Due Process, in connection with plaintiff's classification hearings and proceedings, along with disciplinary proceedings over the past two years, in regards to any disciplinary officers as to those proceedings, by this demand, plaintiff seeks compensatory damages as stated above, for loss of privileges, moral degradation, ("Keeping Plaintiff... Naked for Weeks and even Months at a time".) For quality of life in his daily prison/jail living conditions, where plaintiff is locked down and confined to a cell roughly sixty (60) feet square twenty three (23) hours a day five (5) days a week and twenty four (24) hours two (2) days out of every seven (7) days, being kept in this solitary confinement, which has denied plaintiff loss of his limited liberty enjoyed by other inmates in any kind of social activity such as chess, cards or social engagement of communication. Plaintiff has also been deprived educational, vocational, and or religious programs, such as, weekly church services and or Bible studies that are enjoyed by inmates in general population. Furthermore, plaintiff dose not get to watch television, and loses recreation outdoors with other inmates, and a chance to interact with others in social activities as to maintain, his ability to develop proper social precepts.

E. Cont...

2. Cont... As such, plaintiff seeks separately and in addition, compensatory damages in the amount mentioned above respectfully for his mental and emotional distress resulting from injuries of being physically attacked, as well as, physically and verbally injured and abused. This, along with the prolonged administrative segregation, in solitary confinement, without Due Process of law to which he is entitled because this plaintiff was physically assaulted and injuries he sustained, along with the deprivation of medical care plead herein.

3. Defendants, Dale Lancaster, Corey Swope, Sean Maguire, Greg Ellis, and Terry Thurlow, for the physical and emotional damage and injuries, that were caused and is being caused from their failure to provide adequate and proper medical care without long term delays, and unjust denials.

F. Award Punitive damages in the following amounts:

1. $50,000.00/Fifty Thousand dollars from all above mentioned defendants in caption and complaint, along with any other individuals that may be brought forth in the course of a normal investigation on this case

G.Grant such other relief as it may appear that plaintiff is entitled to.


Address of...

Jeffrey P. Barnard
131 East Madison Road
Madison, Maine  04950

Dated: July 28, 2016

Signature of...
Jeffrey P. Barnard
Pro-Se Counsel

**Note:** Please see attached notarization certifying this motion...

Pursuant to **28 U.S.C. § 1746**, this plaintiff, Jeffrey P. Barnard, declares under penalty of perjury that the foregoing is true and correct to the best of his knowledge and belief, unless otherwise stated, as to matters stated on information and belief, he believes them to be true and correct.

Dated: July 28, 2016

(35)

## NOTARY OF PUBLIC

Before me appears, Jeffrey P. Barnard, and makes under oath
that the above attached document/s and or correspondence, and the
statements therein, are true and correct to the best of his know-
ledge on personal belief, unless otherwise stated, as to matters
stated on information and belief, he believes them to be true and
correct.

Executed in the State of Maine, this 2̲0̲ day of J̲U̲l̲y̲ 20̲1̲6̲ ;
under oath, by Jeffrey P. Barnard.

_____
Sighnature of: Jeffrey P. Barnard

```
[        ]  * [    Laura T. Lapointe     ] *
[        ]    [    Notary Public, Maine  ]
[  Seal: ]    [ My Commission Expires: April 10, 2022 ]
[        ]    [                          ]
[        ]    [       Stamp:             ]
[        ]
```

_____
Notary of Public/Signature...

4̲ / 1̲0̲ / 2̲2̲
_____
Commission Exp. Date...

## DECLARATION OF VERIFICATION
### PROOF OF SERVICE

The declarant, Jeffrey P. Barnard, dose solemnly swear under
penalty of perjury, that above attached document/s and or corresp-
ondence, were deposited into institutional, and or United States,
U.S., Mail Box, on date indicated below...

_____
Signature of: Jeffrey P. Barnard

7̲ / 2̲8̲ / 1̲6̲
_____
Dated by: J.P.B., F.F.