| | | |
|---|---|---|
| JEFFREY PAUL BARNARD, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:16-cv-00276-JAW |
| | ) | |
| TROY BIRES, et al., | ) | |
| | ) | |
| Defendants | ) | |

## RECOMMENDED DECISION ON MOTION TO DISMISS

In this action, Plaintiff Jeffrey Barnard alleges, pursuant to 42 U.S.C. § 1983, that

Defendants violated his constitutional rights during an encounter on May 31, 2014. The

matter is before the Court on Defendant Scott Duff's Motion to Dismiss. (ECF No. 43.)

Through his motion, Defendant Duff contends that given Plaintiff's allegations and

given the Court's findings at Plaintiff's sentencing on a criminal charge arising out of the

encounter, Plaintiff cannot prevail on his claim against Defendant Duff.[1]

After review and consideration of the motion and the relevant filings, I recommend

the Court deny the motion.

---

[1] Plaintiff did not file a response to the motion. Although District of Maine Local Rule 7(b) permits the court to treat a party's failure to oppose a motion to dismiss as a waiver of objection, where the record before the court permits the assessment of the merits of the motion, the failure to oppose should not be determinative. *See*, *e.g.*, *Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 145 (1st Cir. 2004) ("[A] court may not automatically treat a failure to respond to a 12(b)(6) motion as a procedural default."); *Vega-Encarnacion v. Babilonia*, 344 F.3d 37, 41 (1st Cir. 2003) ("If the merits are at issue, the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim.").

## BACKGROUND FACTS

The facts set forth herein are derived from Plaintiff's amended complaint. (ECF No. 16.) The factual allegations of the amended complaint are deemed true when evaluating the motion to dismiss. *McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017).

In May 2014, Plaintiff and his wife lived in their mobile home, which was located on property owned by a third party. Pursuant to an agreement with the landowner, Plaintiff had use of the landowner's tractor. (Am. Compl. ¶¶ 11 – 12.) Sometime in May 2014, a dispute arose between Plaintiff and the landowner over possession of the tractor, which dispute evidently prompted the landowner to call the Ellsworth Police Department for assistance. Officer Barton Tokas came to the property and, after learning of the nature of the dispute, instructed the landowner and Plaintiff that the dispute was a civil matter and should be handled accordingly. (*Id.* ¶ 13.)

On or about May 31, 2014, the landowner again sought assistance from the Ellsworth Police Department. (*Id.* ¶ 14.) Officer Troy Bires first arrived at the scene, and Officer Tokas arrived shortly thereafter. (*Id.* ¶ 15.) The landowner had arranged for a man to go to the property with a flatbed trailer to remove the tractor from the property. Plaintiff intervened and removed the key from the tractor while the man was operating the tractor, thereby preventing the man from taking the tractor. The encounter included some physical contact between Plaintiff and the person attempting to retrieve the tractor. (*Id.* ¶ 16.)

When questioned by Officer Bires, Plaintiff told Officer Bires that it was a civil matter. After speaking with the other individual, Officer Bires returned to Plaintiff's home and knocked on the door. According to Plaintiff, when he partially opened the door, Officer

Bires drew his firearm, pointed it at Plaintiff, and instructed Plaintiff to show the hand obstructed by the door. (*Id.* ¶ 18.) Plaintiff asserts that after Officer Bires repeated the command, Plaintiff complied, and Officer Bires, with his weapon still pointed at Plaintiff, told Plaintiff to turn over the key. (*Id.* ¶ 19.) When Plaintiff protested, Officer Bires told Plaintiff that if he did not turn over the key, he would be arrested for theft and assault. (*Id.*) Plaintiff refused to turn over the key. (*Id.* ¶ 20.)

Officer Bires holstered his weapon and left, but advised Plaintiff that he would return. (*Id.* ¶ 21.) Plaintiff then took a five gallon gas canister that was near his entry and carried it into the mobile home. (*Id.*)

Shortly thereafter, Officer Tokas called out Plaintiff's name. (*Id.* ¶ 22.) Plaintiff and Officer Tokas communicated through the doorway. When Officer Tokas directed Plaintiff to turn over the key, Plaintiff reminded Officer Tokas that he previously told Plaintiff that the dispute was a civil matter. (*Id.*) Officer Tokas told Plaintiff he needed to return the key or he would be arrested. (*Id.* ¶ 23.) Plaintiff then showed Officer Tokas the gas can and threatened to use it if law enforcement attempted to enter his home by force. (*Id.*)

For the next 20 hours, Plaintiff and the police were in a standoff. (*Id.*) The standoff ended on June 1, 2014, at approximately 4:20 a.m., when, after Plaintiff exited the home, Defendant Duff shot Plaintiff. (*Id.*) The parties dispute whether Plaintiff possessed a rifle and raised it in the direction of law enforcement prior to the shooting.

Following Plaintiff's arrest, the United States prosecuted Plaintiff for the unlawful possession of a firearm, based on Plaintiff's status as a convicted felon.[2]  *United States v. Barnard*, No. 1:14-cr-00088-JAW.  Plaintiff pleaded guilty to the charge.  At Plaintiff's sentencing hearing on January 4, 2017, in accordance with 18 U.S.C. § 3553(a)(1), the Court made certain findings of fact concerning the nature and circumstances of the offense.  As part of its assessment, the Court found that during the standoff Plaintiff discharged a firearm multiple times when he was in the mobile home, and that immediately prior to being shot, Plaintiff emerged from his home and raised a rifle. (Motion to Dismiss Ex. D, Sent. Tr. at 153:8-11, 154:6-14, 157:14-16, 159:1 – 160:10, ECF No. 45.)

## DISCUSSION

### A.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted."  In its assessment of the motion, a court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.*, 622 F.3d 62, 68 (1st Cir. 2010)).  A court may also "supplement those facts with facts 'gleaned from … matters of public record, and facts susceptible to judicial notice.'" *Gonzalez v. Velez*, 864 F.3d 45, 48 (1st

---

[2] A review of the record in the criminal matter reveals that the standoff occurred as law enforcement attempted to execute a warrant for Plaintiff's arrest. Officers secured a warrant for Plaintiff's arrest, which warrant was supported by probable cause.  (No. 1:14-cr-00088-JAW: Order Denying Motion to Suppress and Request for Franks Hearing at 26, ECF No. 188.)

Cir. 2017) (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). To overcome the motion, Plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the alleged claim. *Blanco*, 802 F. Supp. 2d at 221.

## B.     Defendant Duff's Motion to Dismiss

Defendant Duff argues dismissal is warranted because (1) a finding for Plaintiff would impermissibly invalidate Plaintiff's sentence in the related criminal matter, and (2) given the Court's sentencing findings, Plaintiff cannot prevail on his claims.[3] (Motion at 1 − 2, 8 − 11, 11 − 15.)

### 1.     *Effect on Plaintiff's Sentence*

Defendant Duff argues that the Court should dismiss Plaintiff's claim because any finding in Plaintiff's favor would impermissibly implicate the duration of Plaintiff's federal sentence.

In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court held that a state prisoner cannot bring a § 1983 claim if "the relief he seeks is a determination that he is entitled to immediate or a speedier release," and that the sole federal remedy in such a case is a writ of habeas corpus. *Id.* at 500. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a state prisoner could not maintain a § 1983 claim for damages where he alleged that his arrest, trial, and conviction were unconstitutional because an

---

[3] In addition to his federal excessive force claim, Plaintiff asserts a claim under state law. The same analysis applies to both claims. *Smith v. Jackson*, 463 F. Supp. 2d 72, 81 − 82 (D. Me. 2006). Defendant also argues Plaintiff has failed to state an actionable claim. (Motion at 15 − 18.) That contention is addressed in the discussion of Defendant's other arguments.

award of damages on such a claim would implicitly invalidate the conviction. Because the plaintiff challenged his conviction, the Supreme Court held that the plaintiff must first obtain relief from the conviction through state or federal habeas proceedings, or similar proceedings, before seeking a remedy under § 1983. *Id.* at 487.

More recently, the Supreme Court explained that its decisions on the issue, "taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81 – 82 (2005)[4] (emphasis in original).

Although the Supreme Court precedent involves claims of state court convicted prisoners, courts have extended the Supreme Court's rationale to civil rights claims brought by federal prisoners if the claims involve matters that are traditionally the subject of habeas corpus proceedings or direct appeals. *Skinner v. U.S. Dep't of Justice & Bureau of Prisons*, 584 F.3d 1093, 1099 (D.C. Cir. 2009) (involving challenge to federal BOP's revocation of good time credits); *Beverly v. Reno*, 23 F.3d 158, 159 (7th Cir. 1994) (involving claim that federal statute under which the plaintiff was convicted was unconstitutional). Under this reasoning, in a claim asserted by a federal prisoner, such as Plaintiff, the issues are whether

---

[4] In *Wilkinson*, the Court held that two prisoners who challenged a state parole proceeding could proceed under § 1983 because success on the claim "does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed consideration of a new parole application." 544 U.S. at 82. Furthermore, at any future parole hearing, the parole authorities would be required to exercise their discretion and could deny parole, which demonstrates that success on the claim would not necessarily imply the invalidity of the duration of the prisoners' sentences. *Id.*

the claim asserted in the § 1983 action could be pursued in a § 2255 habeas petition[5] and, if so, whether success on the asserted § 1983 claim would necessarily invalidate the prisoner's sentence.  For instance, in *Davis v. U.S. Sentencing Commission*, 716 F.3d 660 (D.C. Cir. 2013), the district court held that a federal prisoner could proceed with claims asserted under the Declaratory Judgment Act and *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), without first pursuing habeas relief, where the prisoner's contention was that certain amendments to the U.S. Sentencing Guidelines were unconstitutional.  The court concluded the claim was actionable because success on the claim would not "necessarily imply the invalidity of [his] confinement or shorten its duration."  *Id.* at 666 (quoting *Wilkinson*, 544 U.S. at 82).  The invalidity of the sentence or its duration was not necessarily implied, the court reasoned, because success on the prisoner's claim "would do no more than allow him to seek a sentence reduction, which the district court retains the discretion to deny."  *Id.* (citing 18 U.S.C. § 3582(c)(2)).

Here, Defendant Duff argues Plaintiff cannot proceed on his § 1983 claim because in order to prevail on the claim, Plaintiff must obtain a finding that is inconsistent with the Court's determination that immediately before Defendant Duff shot Plaintiff, Plaintiff

---

[5] Federal prisoners have access to habeas relief under 28 U.S.C. § 2241 and § 2255.  However, to assert a petition under § 2241 the prisoner must be "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Plaintiff's claim does not raise a constitutional or other legal challenge to the Bureau of Prison's custody of his person.  Instead, the issue presented by Defendant's motion is whether Plaintiff's claim requires a factual finding that could demonstrate the invalidity of the duration of his sentence.  Post-conviction challenges to federal sentences are considered under 28 U.S.C. § 2255.  *Trenkler v. United States*, 536 F.3d 85, 97 (1st Cir.2008) (holding that "[a]ny motion filed in the district court that imposed the sentence, and substantively within the scope of [section 2255], is a motion under § 2255, no matter what title" the petitioner gives the motion (quoting *Melton v. United States*, 359 F.3d 855, 857 (7th Cir. 2004))).

exited his home with a rifle and raised the rifle. Defendant contends that such a finding would necessarily implicate Plaintiff's sentence. Defendant's argument is unpersuasive.

Even if the Court assumes Plaintiff could challenge in a habeas proceeding the Court's factual finding at sentencing, a finding in Plaintiff's favor on his § 1983 claim does not necessarily imply the invalidity of his conviction or sentence. Although the Court found that Plaintiff possessed and raised a rifle when he exited his home, the length of sentence was discretionary and the Court cited additional factors when, in establishing the sentence, the Court determined that Plaintiff's conduct created a substantial risk to the safety of others. The Court thus conceivably could have imposed the same sentence without finding that Plaintiff raised his rifle when he exited his home.[6] In short, contrary to Defendant's contention, a finding in favor of Plaintiff would not implicate the validity of Plaintiff's sentence.

## 2. *Effect of the Court's Findings at Sentencing*

Defendant contends that Plaintiff is precluded from litigating in this case the Court's findings during the sentencing proceedings, and that the findings establish that Plaintiff is entitled to qualified immunity or that Plaintiff does not otherwise state an actionable claim.

Qualified immunity protects police officers and other governmental officials from personal liability for money damages in civil rights actions, provided the officer's actions did not violate rights clearly established by the governing law. *Ciolino v. Gikas*, 861 F.3d

---

[6] The Court's sentence of 78 months was less than the 10-year statutory maximum sentence. 18 U.S.C. § 924(a)(2).

296, 302 (1st Cir. 2017). While it is clearly established that individuals have a Fourth Amendment right to be free from the use of excessive force, the availability of qualified immunity requires an evaluation of the "specific context of the case." *Id.*; *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). The qualified immunity defense fails only if every reasonable officer would have understood, under the specific circumstances,[7] that the force applied was excessive. *Mullenix*, 136 S. Ct. at 308.

When the qualified immunity defense is raised, a court initially asks whether the plaintiff alleged sufficient facts to state a claim for violation of a constitutional right. *Ciolino*, 861 F.3d at 303. If so, the court considers whether the right was clearly established when the alleged violation occurred. *Id.*

The general test for Fourth Amendment excessive force claims calls for the consideration of three criteria: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8 – 9 (1985)). To assess a qualified immunity defense in an excessive force case, therefore, the Court must consider the three criteria in light of the specific context in which the force was used, to determine whether a reasonable officer would have known his actions violated a clearly established right. *Mullenix*, 136 S. Ct. at 308.

---

[7] "[S]pecificity is especially important in the Fourth Amendment context, where … '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)).

Although it is not necessary for the party opposing qualified immunity to cite a case directly on point in which a violation was found, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In this way, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The first inquiry is whether Plaintiff has stated a claim of excessive force, and in the context of the qualified immunity defense, the Court must consider whether Plaintiff's allegations "state a claim of violation of clearly established law." *Guzman-Rivera v. Rivera-Cruz*, 98 F.3d 664, 667 (1st Cir. 1996) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). In other words, the Court must assess whether Plaintiff has alleged facts that are sufficiently particularized, as to Defendant Duff, to raise a plausible inference that Defendant Duff violated a clearly established right. *Guzman-Rivera*, 98 F.3d at 667. At the same time, the Court must take care not to impose a heightened pleading standard that effectively negates the plausibility standard. *Garnier v. Rodriguez*, 506 F.3d 22, 26 (1st Cir. 2007). "The complaint need do no more than satisfy the basic notice pleading requirements of the Civil Rules." *Pagan v. Calderon*, 448 F.3d 16, 31 (1st Cir. 2006). "A complaint satisfies that standard if it contains 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 5 (1st Cir. 2005) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, Plaintiff need

only allege "minimal facts as to who did what to whom, when, where, and why." *Id.* (quoting *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004). For dismissal to be appropriate, "there must be no reasonable basis on which [the plaintiff] could establish" the elements of his excessive force claim. *Garnier*, 506 F.3d at 26.

The Court previously determined that Plaintiff has asserted sufficient facts to state an actionable claim against Defendant Duff. (Recommended Decision, ECF No. 14; Order Affirming Recommended Decision, ECF No. 29.) The issue is whether Defendant's assertion of qualified immunity warrants a different conclusion.

Because qualified immunity is an affirmative defense, Defendant Duff has the initial burden to present the specific context needed to support his affirmative defense. *Educadores Puertorriquenos en Accion*, 367 F.3d at 67 (holding that heightened pleading standards are not permissible in civil rights cases, regardless of, inter alia, "the availability vel non of a qualified immunity defense"); *see also cf. Ramos v Patnaude*, 640 F.3d 485, 488 (1st Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 212 (2007) (prisoner cannot be required to plead facts to overcome affirmative defense of failure to exhaust administrative remedies)).

Consistent with the need to resolve immunity questions "at the earliest possible stage in litigation,*" Hunter v. Bryant*, 502 U.S. 224, 227 (1991), a court can in some cases grant a motion to dismiss based on qualified immunity without converting the motion to a motion for summary judgment. *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011); *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008). Defendant Duff attempts to provide

the context needed to determine the issue through reference to Plaintiff's allegations in the complaint, certain evidence presented during the sentencing proceeding, and some of the sentencing Court's findings. While the Court's findings during the sentencing proceeding were not addressed to the reasonableness of Defendant's Duff's conduct, on a motion to dismiss, a court may "augment [the] facts and inferences [from the allegations in a complaint] with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley*, 657 F.3d at 46.

A review of the sentencing transcript reveals that the circumstances of the shooting are disputed. Sergeant Jason Madore testified that Plaintiff exited his home and raised a rifle just prior to the moment Defendant Duff shot Plaintiff. (Motion to Dismiss Ex. D, Sent. Tr. at 70; ECF No. 45.) Plaintiff testified that he did not have a rifle in his hand when he exited his home and was shot. (*Id.* at 94 – 95.) During the sentencing hearing, the Court found Sergeant Madore's version to be credible. (*Id.* at 159.) However, given that Plaintiff alleges in his complaint that Defendant Duff shot him during the standoff "unnecessarily" and "without need or provocation" (Am. Compl. ¶¶ 25, 57), and testified during the sentencing hearing that he merely "put [his] head out one time and [he] was shot" when he was not holding a firearm (Sent. Tr. at 92, 94 – 95), unless the Court's finding during the sentencing hearing precludes Plaintiff from litigating the circumstances of the shooting, Plaintiff has asserted a plausible claim and Defendant would not be entitled to dismissal at this stage of the proceeding.

"Issue preclusion reflects the fundamental principle that courts should not revisit factual matters that a party previously litigated and another court actually decided." *Miller v. Nichols*, 586 F.3d 53, 60 (1st Cir. 2009). "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Under federal common law, the party asserting issue preclusion must demonstrate that (1) both proceedings involve the same issue of law or fact, (2) the parties actually litigated the issue in the prior proceeding, (3) the prior court decided the issue in a final judgment, and (4) resolution of the issue was essential to judgment on the merits. *Vargas-Colon v. Fundacion Damas, Inc.*, 864 F.3d 14, 26 (1st Cir. 2017).

The preliminary question is whether collateral estoppel, or issue preclusion, applies to findings made during sentencing proceedings conducted in accordance with the federal sentencing guidelines.[8] The Second Circuit, while not adopting a per se rule that barred issue preclusion, concluded "in broad and emphatic terms that 'precluding relitigation on the basis of [sentencing] findings should be presumed improper.'" *United States v. U.S. Currency in Amount of $119,984.00*, 304 F.3d 165, 172 (2d Cir. 2002) (quoting *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 306 (2d Cir. 1999)). The Second Circuit found that where "a party seeks to invoke collateral estoppel based upon prior sentencing

---

[8] The analysis of the Supreme Court and the First Circuit suggests that findings made in certain sentencing proceedings, specifically proceedings conducted under the Federal Death Penalty Act, 18 U.S.C. §§ 3591 – 3599, could preclude future litigation on issues essential to determination of the death penalty question. *Sampson v. United States*, 832 F.3d 37 (1st Cir. 2016). Sentencing hearings conducted under the Federal Death Penalty Act are not the same as sentencing hearings conducted on disputed issues under the United States Sentencing Guidelines, although the rules governing admission of evidence in criminal trials are not fully applicable in either proceeding. Accordingly, it is not clear from *Bies* and *Sampson* that the Supreme Court and the First Circuit would give preclusive effect to findings made at hearings conducted on issues under the Guidelines. *Compare* 18 U.S.C. § 3593(c) *with* U.S.S.G. § 6A1.3 and Fed. R. Crim. P. 32(i).

findings, estoppel should be applied only if 'it is clearly fair and efficient to do so." *Id*. at 173.

The Second Circuit's reasoning is sound, and is applied here. The first issue is whether it would be efficient to preclude further litigation on the circumstances of the shooting. The Second Circuit described the relevant analysis as follows:

> When we weigh the efficiency of applying estoppel, we necessarily speak in somewhat hypothetical terms. Application of collateral estoppel always is "efficient," in a limited sense, because it prevents further litigation of an issue in the case at hand. But our inquiry does not end there. If we agree with the District Court that collateral estoppel was properly applied in this case, parties in similar future cases may anticipate a comparable application of collateral estoppel in those cases and, as a result, may litigate differently than they otherwise would. If it is likely that the availability of collateral estoppel in such cases would result in more streamlined litigation, then the efficiency rationale underpinning the doctrine would be well served by its application in this case. If, on the other hand, the availability of collateral estoppel probably would not save the parties time or effort—if, for example, the risk of collateral estoppel would create an incentive to aggressively litigate minor issues early in the litigation—then efficiency would not be promoted by application of the doctrine.

*Id*. at 174. In other words, the efficiency consideration involves not only the impact of collateral estoppel on the case before the court, but also the impact it would have in other proceedings, in which the litigants would undoubtedly consider the court's prior application of issue preclusion. *See also Kosinski v. C.I.R.*, 541 F.3d 671, 678 (6th Cir. 2008) (reasoning that in some cases "giving issue-preclusive effect to sentencing findings … would increase the parties' incentives to litigate issues in the sentencing court, … undercutting the very efficiency goals preclusion is designed to serve" (citing *Monarch*, 192 F.3d at 306)).

The evaluation of the efficiency issue depends on the specific context in which issue preclusion arises. In many cases, efficiency concerns might militate against a court affording preclusive effect to a sentencing determination. For example, a criminal defendant who anticipates filing a civil rights action might choose not to object to a presentence report in an effort to avoid the possibility that the sentencing court's findings on one or more sentencing factors would later preclude the defendant from litigating the issue in a civil rights claim.[9] Similarly, the government may have little reason to litigate at sentencing certain disputed issues where the issues would have little or no impact on the sentencing determination. *Kosinski*, 541 F.3d at 678 – 79.

This case does not appear to present the concerns that might suggest an inefficiency if the Court applies issue preclusion. To the contrary, issue preclusion in this case would likely promote efficiency as, in a contested hearing at sentencing, the Court made findings that would resolve an important factual issue regarding Defendant's qualified immunity defense. In addition, issue preclusion in this case likely would not result in more contested

---

[9] Whether issue preclusion could be avoided by not objecting to facts contained in a presentence report is uncertain. First Circuit precedent suggests the failure to dispute an issue pressed by an opposing party may preclude litigation where the opportunity to litigate the issue, fully and fairly, was available. *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 981 (1st Cir. 1995). However, cases decided in the specific context of federal sentencing determinations suggest issue preclusion would be improper based on guideline calculations that were not actually litigated due to the lack of an objection. *United States v. Graham*, 169 F.3d 787, 789 (3d Cir. 1999) ("[T]he government did not object to the presentence report in the previous sentencing proceeding and the district judge adopted the report and its findings in its entirety. The matter was thus not actually litigated in the previous sentencing proceeding."); *U.S. v. Duarte-Aldana*, 364 F. App'x 360, 362 (9th Cir. 2010) (collateral estoppel inapplicable where "[n]either the government nor [the defendant] objected to the PSR's Guidelines calculation, because the issue was not actually litigated"); *United States v. Hammon*, 277 F. App'x 560, 568 & n.2 (6th Cir. 2008) (plea agreement to accept sentence based on base offense level calculation corresponding to tax loss greater than $1,000,000 did not support issue preclusion because the amount of tax loss was not fully litigated and the agreement did "not evince a clear intent … to settle the question of the accuracy of the tax assessment").

sentencing hearings in the future.  Future criminal defendants would not be inclined, based on the application of issue preclusion in this case, to challenge more issues at sentencing.[10] Finally, the circumstances under which the Court considered and decided the issue at sentencing demonstrate that the efficiency assessment would support application of the doctrine in this case.  The Court did not make the findings based solely on the parties' arguments regarding the presentence investigation report.  Rather, the Court made the pertinent factual determination after a contested evidentiary hearing that included the testimony of several witnesses, including Plaintiff.  Given that the Court conducted an extensive evidentiary hearing at sentencing, the likelihood that application of issue preclusion in this case would result in less efficient sentencing hearings in the future is minimal.

Because application of the doctrine in this case would not undermine the efficiency rationale on which the doctrine is based, the Court must assess whether the doctrine precludes litigation of the issue (i.e., Plaintiff's possession and handling of a rifle just prior Defendant's use of force) in this case.[11]

   *a.  Whether both proceedings involve the same issue of law or fact.*

---

[10] The Second Circuit has reasoned that the efficiency concern is potentially significant because "a permissive approach to collateral estoppel will probably lead to sentencing proceedings of mushrooming complexity [with] no guarantee that subsequent civil actions will be made proportionately simpler." *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 306 (2d Cir. 1999).  However, the Second Circuit did not impose a "blanket prohibition," and expressed "confiden[ce] that … trial judges will be able to limit the[] impact on a case-by-case basis." *Id.*

[11] Whether to apply collateral estoppel or issue preclusion also requires a fairness assessment. *U.S. Currency in Amount of $119,984.00*, 304 F.3d at 172.  In a fairness assessment, a court considers whether there was a full and fair opportunity to litigate the issue and whether the issue was actually litigated. *Id.*  Because the issue preclusion analysis includes consideration of whether the issue was actually litigated, the fairness issue will be assessed as part of the issue preclusion analysis.

"[T]he reach of collateral estoppel 'must be confined to situations where the matter raised in the second suit is identical in all respects to that decided in the first proceeding.'" *Faigin v. Kelly*, 184 F.3d 67, 78 (1st Cir. 1999) (quoting *C.I.R. v. Sunnen*, 333 U.S. 591, 599 – 600 (1948)).

Although Plaintiff's criminal conviction on the felon-in-possession charge did not require a determination that he threatened an officer with the rifle, the United States Sentencing Guidelines require consideration of multiple sentencing factors, and the Federal Rules of Criminal Procedure require that a presentence report be prepared to "identify all applicable guidelines." Fed. R. Crim. P. 32(d). Among the applicable guidelines identified in the report in Plaintiff's criminal case were Guidelines § 2K2.1(b)(6)(B) (use of firearm in the course of another felony offense) and § 3C1.2 (reckless creation of a substantial risk of death or serious injury to another person in the course of fleeing). (Sent. Tr. at 165 – 169; see also No. 1:14-cr-00088-JAW, Findings Affecting Sentencing, ECF No. 280-1.) Plaintiff objected to the presentence report to the extent it suggested he had used the rifle in a manner that created a substantial risk of death or serious injury. The evidentiary hearing at sentencing included evidence of Plaintiff's use of a firearm, including whether Plaintiff raised his rifle in the direction of law enforcement officers just before the time Defendant Duff shot Plaintiff.

    *b. Whether the parties actually litigated the issue in the prior proceeding.*

In order for an issue of fact or law to be "actually litigated," the issue must not simply be "resolved," it must be litigated as a controverted issue. *In re Kane*, 254 F.3d

325, 329 (1st Cir. 2001). Additionally, the party against whom issue preclusion would apply must have had a "full and fair" opportunity to contest the issue. *Id.*

First, insofar as Plaintiff objected to and challenged at sentencing the findings in the presentence report regarding his use of a rifle, and given that the parties presented evidence and argument on the issue, the issue was plainly litigated at sentencing. The question is thus whether the sentencing hearing afforded Plaintiff a "full and fair" opportunity to present his case. The Ninth Circuit's discussion on the issue is instructive.

> In deciding whether an opportunity to litigate is "full and fair," a court must make a practical judgment based on at least two considerations. First, the court must compare the procedures in the prior and subsequent actions. If "procedural opportunities unavailable in the first action ... could readily cause a different result" in the second action, then the results of the first action generally should not be given preclusive effect. *Parklane Hosiery*, 439 U.S. at 331 & n.15, 99 S. Ct. 645; *see also Montana v. United States*, 440 U.S. 147, 164 n. 11, 99 S. Ct. 970 (1979) ("Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."). Second, the court must consider the parties' incentives to litigate in the two actions. If a party had good reason not to contest an issue vigorously during the first action and did not, in fact, vigorously contest the issue, that party generally should be entitled to relitigate the issue during the second action. *See* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4423, at 612 (2d ed. 2002) ("The most general independent concern reflected in the limitation of issue preclusion by the full and fair opportunity requirement goes to the incentive to litigate vigorously in the first action."); *see also Parklane Hosiery*, 439 U.S. at 330, 99 S. Ct. 645 (noting that incentive problems sometimes arise when the second action was not reasonably foreseeable at the time of the first action).

*Maciel v. C.I.R.*, 489 F.3d 1018, 1023 (9th Cir. 2007). Citing fairness concerns, both the Ninth Circuit and the Second Circuit concluded that "findings made in a criminal sentencing proceeding ordinarily should not have preclusive effect in a subsequent civil case." *Id.* (citing *Monarch Funding Corp.*, 192 F.3d at 305). In *Monarch*, the Second

Circuit did not give preclusive effect to certain sentencing findings that favored the government at a later civil trial, despite relatively extensive criminal sentencing proceedings, because the later civil trial provided "procedural opportunities that are unavailable at sentencing and that could command a different result," noting in particular differences in the availability of discovery. 192 F.3d at 305.[12]

The "procedural opportunities" in this case are not materially different from the opportunities at sentencing. The record of the sentencing hearing reveals no limitations on Plaintiff's ability to subpoena witnesses and otherwise to present evidence on the issue. Plaintiff, in fact, testified in some detail about the circumstances of the shooting. In addition, Plaintiff had the opportunity to and did cross-examine the law enforcement officers whom the Government called as witnesses to establish that Plaintiff possessed and used a rifle.[13] After the presentation of the evidence, the Court permitted counsel to argue

---

[12] In *U.S. Currency*, the Second Circuit stated that giving preclusive effect to sentencing findings "implicates serious concerns of fairness, while appearing to offer little benefit in terms of increased efficiency." 304 F.3d at 172. In *U.S. Currency*, issue preclusion was asserted against the government. Cases such as *U.S. Currency* involve attempts by criminal defendants to avoid the economic consequences of their criminal convictions in later forfeiture proceedings. *See also Kosinski v. C.I.R.*, 541 F.3d 671, 678 (6th Cir. 2008); *United States v. Real Prop. Located at 7401-03 S. Racine Ave*., *Chicago, Ill*., No. 04-cv-05885, 2009 WL 806120, at *2 (N.D. Ill. Mar. 25, 2009). Arguably, the cases are in a distinguishable category of cases because the courts in the cases recognize the practical difficulties of applying issue preclusion doctrine in a manner that encourages the government to litigate extensively in criminal proceedings factual issues related to anticipated civil forfeiture or tax collection proceedings, which issues are often not relevant to the element of the crime.

[13] In *U.S. Currency*, the Second Circuit reasoned that the United States did not have a full and fair opportunity in the underlying criminal case to litigate issues pertaining to the source of the funds it later pursued through civil forfeiture proceedings, because the United States could not compel the defendant in the criminal case to testify or rely on any adverse inference based on his refusal to testify, whereas the civil forfeiture proceeding enabled the United States to take depositions and to rely on adverse inferences based on the defendant's failure to testify. 304 F.3d at 177. Here, officers testified and were subject to cross-examination by Plaintiff's defense counsel, and Plaintiff testified.

the contested issues regarding the encounter,[14] and then made specific findings on the contested issues.[15]  (Sent. Tr. at 156 – 160.)  Under the circumstances, Plaintiff had a full and fair opportunity to litigate the issue of possession and use of a rifle just prior to Defendant's use of force.

In sum, therefore, Plaintiff had a full and fair opportunity to litigate the issue and the issue was actually litigated.[16]

    *c. Whether the prior court decided the issue in a final judgment.*

In the criminal proceeding, the Court issued its Judgment, which included a term of imprisonment of 78 months.  In the findings at the sentencing hearing, which findings were the bases for the judgment, the Court specifically found that Plaintiff raised his rifle as law enforcement recounted.  In its Judgment, the Court incorporated its Statement of Reasons, to which it appended Exhibit A, Findings Affecting Sentence.  (ECF No. 280-1.)  The Findings specifically state that Defendant "recklessly created a substantial risk of death or serious bodily injury to another person," for purposes of the United States Sentencing

---

[14] Sent. Tr. at 146 – 156.

[15] In *Monarch*, the court observed that a sentencing hearing might not afford a full and fair opportunity to litigate based in part on the inapplicability of the Federal Rules of Evidence, because the "judge is largely unlimited either as to the kind of information he may consider, or the source from which it may come, so long as the information has sufficient indicia of reliability to support its probable accuracy."  192 F.3d at 305 (internal quotation marks, citations and brackets omitted).  However, in this case, there is no suggestion that the Court's sentencing finding rested, even in part, on hearsay or other evidence that would not be admissible in a civil trial.

[16] Fairness, therefore, would not prevent application of issue preclusion in this case.  *See U.S. Currency in Amount of $119,984.00*, 304 F.3d at 172 (court must assess whether it would be fair to apply collateral estoppel).

Guidelines (U.S.S.G.) § 3C1.2. (*Id.* ¶ 6.) The issue, therefore, was necessarily decided as part of the Court's final judgment.

    *d. Whether resolution of the issue was essential to judgment on the merits.*

Finally, the Court must consider whether the finding regarding Plaintiff's threatening use of his rifle just prior to the time Defendant Duff shot him was essential to the Court's Judgment in the criminal case. Ordinarily, a criminal conviction is preclusive of issues that were essential to conviction on the specific charges. *See, e.g.*, *Napier v. Town of Windham*, 187 F.3d 177, 184 (1st Cir. 1999). Sentencing determinations, however, typically involve the Court's consideration of a variety of factors that are not essential to conviction on the underlying charges, but which involve "a number of important, commonly occurring real offense elements." U.S.S.G. Ch. 1, Pt. A, § 4(a).

In the context of civil actions to recover tax deficiencies following convictions for tax evasion, some circuit courts have held that a finding in connection with the penalty/restitution phase of the tax evasion prosecution should not preclude subsequent litigation because the finding does not pertain to an element of the crime of conviction. *Kosinski v. Comm'r of Internal Revenue*, 541 F.3d 671, 676 (6th Cir. 2008) (citing *Hickman v. Comm'r of Internal Revenue*, 183 F.3d 535, 538 (6th Cir. 1999)); *Morse v. Comm'r of Internal Revenue*, 419 F.3d 829, 834 (8th Cir. 2005) ("Because the amount of restitution was not essential to the judgment in the criminal prosecution, the Commissioner is not precluded from litigating Morse's civil tax liability."). In such cases, however, the Guidelines direct the Court to estimate the tax loss for purposes of placing the loss within

"broad tax-loss bands." *Kosinski*, 541 F.3d at 676 (citing U.S.S.G. § 2T1.1 and describing a tax loss band spanning from $550,000 to $2,500,000).[17]

The question is not whether the issue relates to an element of the criminal charge. Otherwise, there would be no circumstance in which a finding at sentencing could preclude litigation of the issue in a subsequent civil action. That is, unless the Court, unlike the Second Circuit, is prepared to adopt a per se rule prohibiting issue preclusion based on sentencing findings, the question is whether resolution of the issue can fairly be viewed as essential to the judgment in the criminal case.

In this case, the record reflects that at sentencing, because Plaintiff contested some of the facts included in the presentence investigation report, the parties presented evidence regarding the circumstances of Plaintiff's encounter with law enforcement. After consideration of the evidence, the Court made certain findings, including that Plaintiff raised a rifle in the direction of law enforcement just prior to the time Defendant Duff shot Plaintiff.

As part of the Court's calculation of the total offense level under the Sentencing Guidelines, the Court assessed a two-level enhancement for reckless endangerment under Guideline 3C1.2, which provides for a two-level enhancement "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." The Court arguably assessed the

---

[17] The Guidelines tax table contemplates a general determination that the loss was "more than" a given amount. U.S.S.G. § 2T4.1. The *Kosinski* court also observed that the Guidelines cannot "constitutionally cause [the] sentence to turn on the district court's tax loss finding" under *Booker,* given the Court's discretion "to consider or not consider [the amount of] tax loss" in reaching its sentence. 541 F.3d at 676.

two-level enhancement based in part on the fact Plaintiff raised the rifle in the direction of Defendant Duff. Without the two-level enhancement, the Guideline sentencing range would have been reduced from 63 to 78 months to 51 to 63 months. Given that the Court imposed a sentence within the sentencing range as found by the Court, Defendant Duff could contend that the finding that Plaintiff raised his rifle in Defendant Duff's direction was essential to the criminal judgment.

A review of the sentencing transcript, however, reveals otherwise. The Court also found that during the standoff with law enforcement, Plaintiff discharged a firearm six times, including at a window of his mobile home on at least one occasion. (Sent. Tr. at 158.) Understandably, Plaintiff's discharge of the firearm was of great concern to the Court at sentencing when the Court assessed the seriousness of Plaintiff's conduct:

> Short of the actual use of a firearm by a felon to injure or kill someone, from my perspective, this type of possession is the most egregious and dangerous possession by a felon imaginable, and as it turns out, unfortunately for the defendant, the risk of very serious harm, which was present for everybody on the scene, including these outstanding, I might add, police officers who come to protect us in situations like this, that the person who suffered the risk of the danger he had created turned out to be the defendant himself.

(Sent. Tr. at 195.)

The Court's findings and reasoning demonstrate that in the Court's view, Plaintiff's discharge of firearm multiple times in the context of a standoff with police created a substantial risk of serious harm to all individuals present, and that the risk was present regardless of whether Plaintiff raised his rifle in the direction of law enforcement. The Court, therefore, could have, and likely would have, imposed the two-level enhancement for reckless endangerment regardless of whether Plaintiff raised his rifle after exiting his

home. Because the Guideline sentencing range would likely have been the same regardless of whether the Court found that Plaintiff raised his rifle in the direction of law enforcement, and given the Court's legitimate concern about the risk posed by Defendant's conduct during the standoff, including Plaintiff's discharge of a firearm multiple times during the standoff, the finding that Plaintiff raised his rifle in the direction of law enforcement before Defendant shot Plaintiff cannot be deemed essential to the judgment for purposes of issue preclusion. Plaintiff, therefore, is not collaterally estopped from litigating the issue in this case.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court deny Defendant Duff's motion to dismiss.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

Dated this 15th day of March, 2018.               /s/ John C. Nivison
                                                  U.S. Magistrate Judge