UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY PAUL BARNARD,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF MAINE, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No: 1:16-cv-00276-LEW<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS BIRES AND TOKAS' MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 56, Defendants Troy Bires and Barton Tokas hereby move for summary judgment as to all of Plaintiff's claims. As set forth below and in the accompanying Defendants' Statement of Material Facts Not in Dispute ("DSMF"), Defendants contend that there are no genuine issues of material fact precluding this Court from entering summary judgment in favor of Defendants Bires and Tokas.

## BACKGROUND

This case arises from a twenty-hour police standoff involving Plaintiff Jeffrey Barnard and numerous law enforcement agencies, including the Ellsworth Police Department and the Maine State Police Tactical Team. *See* Order Rejecting Magistrate Decision, Doc. No. 50, ECF PageID# 617-18. The standoff ended after Maine State Police Trooper Scott Duff shot Plaintiff. *Id.* This information is provided for background purposes only and is not material to the claims against Defendants Bires and Tokas, both Ellsworth police officers at the time of this incident. Defendants Bires and Tokas did not use any physical force against Plaintiff and were not even present when he was shot by Defendant Duff. Nevertheless, Plaintiff apparently seeks to hold

Defendants Bires and Tokas liable under 42 U.S.C. § 1983 and state law. Based on the undisputed facts, there is no basis for liability against Defendants Bires and Tokas under any theory.

The undisputed material facts relevant to Defendants Bires and Tokas are as follows: On May 31, 2014, Officer Bires was dispatched to a residence in Ellsworth to respond to a civil dispute involving the owner, James Thibodeau, and Plaintiff Jeffrey Barnard, who was living in a camper parked in the driveway of the Thibodeau residence. DSMF ¶ 3. On arrival at the residence, Officer Bires spoke to Plaintiff about a complaint by Mr. Thibodeau that Plaintiff had taken the key for Mr. Thibodeau's Kubota tractor and would not return it. DSMF ¶ 4. Plaintiff claimed that he had an agreement with Mr. Thibodeau for the exclusive use of the tractor and that Plaintiff had taken the key so it could not be moved. DSMF ¶ 5. Officer Bires spoke to Mr. Thibodeau who denied having any kind of agreement with Plaintiff, but confirmed that Plaintiff had the keys to the tractor so he was unable to move it, as he wished to do. DSMF ¶ 7.

Officer Bires went to Plaintiff's camper to speak with Plaintiff, who had gone inside the camper. DSMF ¶ 8. Plaintiff came to the door, but refused Officer Bires' request that he give him the keys to the tractor. DSMF ¶ 10. When Officer Bires told Plaintiff he would be charged with theft if he did not return the keys, Plaintiff became very agitated and sent his dog out of the camper towards Officer Bires. DSMF ¶ 11. When Officer Bires saw Plaintiff standing in the doorway of the camper, but concealing his right hand from view, Officer Bires ordered Plaintiff to show him his hands. DSMF ¶ 13. Upon being ordered by Officer Bires to show his hands, Plaintiff responded by saying: "No, fuck you, shoot me." DSMF ¶ 14. Because Plaintiff refused to show his hands, and given the volatility of Plaintiff, Officer Bires drew his service pistol while continuing to give commands to Plaintiff to show his hands. DSMF ¶¶ 15-16. Plaintiff refused to

show his hands, told Officer Bires to shoot him and then closed the trailer door. DSMF ¶¶ 16-17. Officer Bires retreated to his cruiser to call for backup. DSMF ¶ 20.

Officer Tokas arrived at the scene in response to the request for backup and was briefed. DSMF ¶¶ 20-21. Because Officer Tokas knew Plaintiff and thought he had a good rapport with Plaintiff based on their previous exchanges, he decided to attempt to talk to Plaintiff to deescalate the situation. DSMF ¶ 24. Plaintiff was standing in the camper's doorway as he spoke to Officer Tokas, who told Plaintiff that he would be charged with theft if he did not return the key. DSMF ¶¶ 25-26. Plaintiff then told Officer Tokas that he and his wife would barricade themselves inside the camper. DSMF ¶ 27. Officer Tokas warned him against causing a police standoff. DSMF ¶ 27. Plaintiff told Officer Tokas that he had caused a prolonged standoff previously, and that he and his wife would take their own lives before he'd return to prison. Plaintiff also advised Officer Tokas that he would torch the camper. DSMF ¶¶ 28-29. After initially closing the door, Plaintiff opened the door back up and showed Officer Tokas a five gallon gasoline can, warning Officer Tokas that he was not joking about blowing up the camper. DSMF ¶ 30. Plaintiff then shut the door to the camper, and refused to speak to Officer Tokas further. DSMF ¶ 31.

As noted, a twenty-hour standoff ensued culminating in Defendant Duff shooting Plaintiff. DSMF ¶¶ 34-35, 39. When Plaintiff was shot by a member of the Maine State Police tactical team at approximately 3:30 a.m. on June 1, 2014, Officer Bires and Officer Tokas were no longer on duty and were not present at the scene. DSMF ¶ 39. After their initial, brief exchanges with Plaintiff, they had no further contact with him during or immediately after the standoff. DSMF ¶¶ 36-38. Plaintiff plead guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). DSMF ¶ 43. Officer Bires testified about the events of May

31, 2014 at Mr. Barnard's criminal sentencing hearing on January 4, 2017 and was cross-examined by Mr. Barnard's criminal defense attorney. DSMF ¶ 42.

Plaintiff subsequently initiated this Fourth Amendment excessive force claim under 42 U.S.C. § 1983. He also alleges state law tort claims of assault and battery. Plaintiff alleges that Defendant Bires pointed a gun in Plaintiff's face. He also alleges that Defendant Tokas was present and that every officer present on the scene "assaulted and attacked" him. Am. Compl. ¶¶ 18, 24. The Magistrate Judge screened the Complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A and recommended that the Complaint be dismissed against all defendants except for Troy Bires. Recommended Decision After Screening Compl. at 1–6 (ECF No. 4). The Court subsequently granted Mr. Barnard's motion to amend the Complaint. Mem. of Decision Granting Mot. to Amend (ECF No. 15). The Magistrate Judge issued a second recommended decision based on the Amended Complaint, concluding that Mr. Barnard had stated a § 1983 excessive force and state law assault and battery claims against Defendants Bires, Duff and Tokas, which the Court affirmed. (ECF No. 29). Defendant Duff moved to dismiss all claims. The Magistrate Judge recommended denying the motion and Defendant Duff filed an objection. *See* ECF. Nos. 47 & 49. Thereafter, the Court granted Defendant Duff's motion to dismiss. *See* ECF. No. 50.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits. . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Fabiano v. Hopkins*, 352 F.3d 447, 452 (1st Cir. 2003). A fact is "material" if it "has the potential to change the outcome of the suit." *Tropigas de Puerto Rico, Inc. v. Certain Underwriters of Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (parallel

4

quotation omitted).  An issue is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party." *Id*.  The facts are viewed in the light most favorable to the non-moving party and the court draws all reasonable inferences in favor of the non-moving party.  *Fed. Ins. Co. v. Commerce, Inc. Co.*, 597 F.3d 68, 70 (1st Cir. 2010).  However, "[o]nce the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the onus is on the nonmoving party to present facts that show a genuine issue for trial." *Napier v. Town of Windham*, 187 F.3d 177, 182 (1st Cir. 1999).  The non-moving party must present "competent evidence and specific facts to stave off summary judgment."  *Tropigas*, 637 F.3d at 56 (internal citations omitted).  The non-moving party's "obligation cannot be satisfied by conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001).

## ARGUMENT

I. **DEFENDANTS BIRES AND TOKAS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S SECTION 1983 EXCESSIVE FORCE CLAIM**

A. **Defendants Bires and Tokas Never Seized Plaintiff within the Meaning of the Fourth Amendment**

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "To make out a Fourth Amendment excessive force claim, a plaintiff must show, as an initial matter, that there was a seizure within the meaning of the Fourth Amendment, and then that the seizure was unreasonable." *Stamps v. Town of Framingham*, 813 F.3d 27, 35 (1st Cir. 2016). Here, it is undisputed that there was no physical force used by Defendants Bires and Tokas against Plaintiff. DSMF ¶ 40. However, the Fourth Amendment's bar on unreasonable seizures may be implicated if a person is seized by other methods. A person is seized by a "show of authority" only when "'in view of all of the circumstances surrounding the incident, a

reasonable person would have believed that he was not free to leave.'" *United States v. Fields*, 823 F.3d 20, 25 (1st Cir. 2016) (quoting *United States v. Mendenhall*, 446 U.S. 544, 553–54, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980)). A show of authority can result from: "[1] the threatening presence of several officers, [2] the display of a weapon by an officer, [3] some physical touching of the person of the citizen, or [4] the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554. However, an officer's show of authority "effects a seizure only when the defendant actually yields or submits to the show of authority." *Fields*, 823 F.3d at 25. *See also California v. Hodari D.*, 499 U.S. 621, 626, 111 S. Ct. 1547, 1550–51, 113 L. Ed. 2d 690 (1991) ("The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not."); *Stamps*, 813 F.3d at 35 ("A person is seized by an officer's show of authority if 'a reasonable person would have believed that he was not free to leave' . . . and he in fact submits to the officer's assertion of authority.") (internal citations omitted).

      Here, Officer Bires' "show of authority" was the display of his firearm and commands for Barnard to show his hands. DSMF ¶¶ 13-15. Under these circumstances, a reasonable person seeing the display of Officer Bires' pistol and hearing his commands, would have believed that he was not free to leave. Even so, Plaintiff was not "seized" within the meaning of the Fourth Amendment because Plaintiff never actually submitted to Officer Bires' show of authority. Rather, Plaintiff refused to show his hands and went back into his trailer. DSMF ¶¶ 14-18. Because Officer Bires never seized Plaintiff, Plaintiff's Fourth Amendment claim fails as a matter of law.

Officer Tokas also never seized Plaintiff within the meaning of the Fourth Amendment. Officer Tokas arrived on the scene after Officer Bires retreated from the trailer. Because Officer Tokas had dealt with Plaintiff previously, he decided to approach the camper to speak Plaintiff in an attempt to resolve the issue about the tractor key and try to deescalate the situation. DSMF ¶ 24. Officer Tokas spoke with Plaintiff briefly and told Plaintiff to turn over the keys to the tractor or he could be charged with theft. DSMF ¶ 26. In response, Plaintiff threatened to blow up the camper, initially went inside the camper and then opened the door shortly thereafter to show Officer Tokas a gas can. *See* DSMF ¶¶ 26-30. Although Officer Tokas spoke with Plaintiff, his "show of authority" was, at most, his commands to return the keys. Officer Tokas never seized Plaintiff within the meaning of the Fourth Amendment because Plaintiff never submitted to Officer Tokas' assertion of authority, instead returning to his trailer. *See Stamps*, 813 F.3d at 35. Accordingly, Plaintiff's § 1983 Fourth Amendment claims against Officer Tokas fail as a matter of law.

      **B.**      **Bires and Tokas' Actions were Objectively Reasonable, or at the Very Least, They are Entitled to Qualified Immunity**

Even assuming *arguendo* that Plaintiff was seized within the meaning of the Fourth Amendment by Bires and Tokas' show of authority, their actions were objectively reasonable as a matter of law and did not amount to excessive force under the Fourth Amendment. To establish a Fourth Amendment violation based on excessive force, "a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances." *Jennings v. Jones*, 499 F.3d 2, 11 (1st Cir. 2007). Excessive force claims are evaluated under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The reasonableness of an officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Estate of*

7

*Bennett v. Wainwright*, 548 F.3d 155, 175 (1st Cir. 2008) (citing *Napier*, 187 F.3d at 188). Relevant factors for consideration include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. A court's assessment of reasonableness must account "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

  Officer Bires did not use excessive force in violation of Plaintiff's Fourth Amendment rights. Officer Bires un-holstered and displayed his firearm for approximately one minute after Plaintiff refused to show his hands and was becoming increasingly agitated. DSMF ¶¶ 14-19. Plaintiff kept his right hand behind the door where it was not visible to Officer Bires. DSMF ¶ 18. Officer Bires did not know what Plaintiff was holding in his hand, but based on Plaintiff's increased agitation and his violent statement telling Bires to shoot him, Officer Bires believed Plaintiff may have a weapon in his hand. DSMF ¶¶ 14-16. It was reasonable for Officer Bires to have his firearm ready in order to protect himself from the potential threat of Plaintiff. Given Plaintiff's volatility and the time it takes to unholster a firearm, it was reasonable for Officer Bires to draw his pistol so he would be prepared if Plaintiff suddenly displayed a weapon. DSMF ¶ 16. Officer Bires never pointed his firearm at Plaintiff's head and he never discharged his firearm. DSMF ¶ 19. He tried to deescalate the situation by backing away from Plaintiff's residence. Officer Bires' brief display of his firearm was reasonable given the circumstances he confronted.

  Even assuming that Plaintiff did not have a weapon in his hand, Officer Bires' actions were not unreasonable under the Fourth Amendment simply because "[he] may have failed to

perfectly calibrate the amount of force required to protect [himself]." *Berube*, 506 F.3d at 85. At the very least, Officer Bires is entitled to qualified immunity. Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A police officer's conduct "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, for a law to be considered clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.  See also *White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017).

      Here, because Officer Bires never discharged his firearm, the focus of the inquiry is on the *display* of a firearm, not the actual use of deadly force. First Circuit precedent establishes that displaying a firearm under the circumstances was constitutionally permissible. This case is distinguishable from First Circuit cases where qualified immunity was denied to officers who pointed their firearms for extended periods of time at compliant, innocent bystanders. For example, in *Mlodzinski v. Lewis*, officers were denied qualified immunity after detaining two innocent and compliant women at gunpoint during a search for a suspect believed to be living at the same residence. 648 F.3d 24 (1st Cir. 2011). There, the officers shoved the fifteen year old sister of the suspect to the ground, handcuffed her and pointed an assault rifle at her head for seven to ten minutes. *Id.* at 30. The other woman, the suspect's mother, was held at gunpoint for thirty minutes while forced to sit nearly nude in bed. *Id.* at 39. The First Circuit recognized that

9

the officers "did initially have to make split second decisions to assess [the individuals'] threat level and the possible need for restraint" but "it quickly became clear" that the two women were not suspects. *Id.* at 37-38. Because the women were compliant with orders, and clearly did not pose a danger to the officers, the officers were not entitled to qualified immunity. *Id.* 39-40. In *Mlodzinski*, the First Circuit alluded to the fact that the outcome of the case may have been different, if for example, the officer had pointed the gun at the women "for only a very short period." *Id.* at 40.

Similarly, in *Stamps v. Town of Framingham*, the First Circuit found that the officer was not entitled to qualified immunity where the officer pointed a loaded, semi-automatic rifle, with the safety off and his finger on the trigger, at Stamps. 813 F.3d 27 (1st Cir. 2016). Police officers were executing a search warrant of Stamps' apartment, but he was not suspected of any illegal activity underlying the search warrant. *Id.* at 30-31. Officers were informed in advance that Stamps, who was sixty-eight years old, would likely be in the apartment, but that his criminal record consisted only of motor vehicle arrests/charges. *Id.* at 30-31. The officer continued to point the gun at Stamps even though he was fully compliant with orders, was unarmed, laid flat on his stomach and "constituted no threat." *Id.* at 31. The Court, relying in part on *Mlodzinski*, found that it was clearly established that a warrant to conduct a SWAT raid does not grant officers license to aim their weapons at the heads of submissive and nonthreatening individuals. *Id.* at 40.

Here, in contrast, Officer Bires knew that Plaintiff was non-compliant with his orders, becoming increasingly agitated, and had responded to his commands by yelling "fuck you, shoot me." Officer Bires was also the only officer present when he encountered Plaintiff and un-holstered his weapon. Unlike in *Stamps* and *Mlodzinski*, Officer Bires did not have the luxury of

10

back-up during his exchange with Plaintiff. Barnard was also the suspect, not an innocent bystander, and he refused to comply with commands and was acting unpredictably. Based on Plaintiff's refusal to immediately show his hand and his volatility, it was objectively reasonable to anticipate that he may have a dangerous weapon. *Stamps* and *Mlodzinski* clearly established that it was impermissible to point a gun at the head of innocent, non-threatening and compliant bystander for an extended period of time. Those cases do *not* clearly establish that an officer cannot un-holster his firearm during an exchange with a volatile, potentially dangerous suspect for a short period of time. Officer Bires was not required to wait and see if Plaintiff pulled out a gun or other dangerous weapon before preparing to protect himself. *Cf. Berube v. Conley*, 506 F.3d 79 (1st Cir.2007) (holding that the officer was entitled to qualified immunity where she continued to shoot a man who had charged her with a hammer, even though she continued to fire after he fell to the ground, because the events happened in a very short period of time and the evidence showed the officer made a split-second decision under uncertain circumstances).

Perhaps the situation might have been handled differently. However, that is not the proper inquiry. Officer Bires' actions must be evaluated from the on-scene perspective, not with the advantage of 20/20 hindsight. *See Saucier v. Katz*, 533 U.S. 194, 205, 121 S. Ct. 2151 (2001). Under these circumstances, the objective reasonableness of the officer's conduct cannot be seriously questioned. The standard applied must be "comparatively generous" to the officer because he was faced with "potential danger," "emergency conditions," and "urgent circumstances." *See Roy v. City of Lewiston*, 42 F.3d 691, 695 (1st Cir. 1994). There is no precedent requiring an officer to wait until he or she actually sees a weapon before un-holstering and displaying his or her firearm. Courts, rightly so, have never determined the exact moment when an officer is allowed to un-holster his or her firearm because officers are often required to

use their judgment and react quickly to a suspect's actions in tense, rapidly evolving emergency situations. Officer Bires was not required to wait and see what Plaintiff may have had in his hand or whether Plaintiff was going to react violently. *Cf. Brosseau v. Haugen*, 543 U.S. 194, 197, 125 S. Ct. 596; *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015); *Napier v. Town of Windham*, 187 F.3d 177, 188–89 (1st Cir. 1999) (rejecting argument that officers' pre-confrontation conduct amounted to violation of clearly established *constitutional* right); *Sheehan*, 135 S. Ct. at 1777 ("[E]ven if [the officers] misjudged the situation, Sheehan cannot 'establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided.'") (internal citations omitted). Based on existing precedent, Officer Bires did not violate clearly established law and is therefore entitled to qualified immunity.

    Similarly, to the extent Plaintiff was seized by Officer Tokas within the meaning of the Fourth Amendment, Officer Tokas' presence and voice commands were objectively reasonable as a matter of law. Officer Tokas never used any physical force against Plaintiff, let alone excessive force. During Officer Tokas' interaction with Plaintiff, Plaintiff threatened to blow up his camper and create a police standoff. Officer Tokas' measured response by attempting to communicate with Plaintiff to convince him to give up the key to the trailer and not cause a standoff was objectively reasonable. Plaintiff was making serious threats of harming himself, his wife, and, implicitly, law enforcement officers by creating a standoff and setting off an explosion. DSMF ¶¶ 27-30. He was also disregarding Officer Tokas commands. Defense counsel is not aware of any Fourth Amendment case law that prohibits law enforcement officers from interacting with suspects or attempting to deescalate a situation. *See United States v. Mendenhall*, 446 U.S. 544, 553–54, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980) ("The purpose of the

Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'") (internal citation omitted). Therefore, at the very least, Officer Tokas is entitled to qualified immunity.

### C. Any State-Created Danger Theory of Liability Fails as a Matter of Law

Plaintiff alleges that the "ineptitude behavior" from Defendant Tokas and Bires "resulted in a police standoff" for twenty hours "ending with this Plaintiff being shot in the head/face" by Defendant Duff. Amended Complaint, Doc. No. 16 ECF PageID# 146. Although Plaintiff alleged that Defendants violated his due process claims under the Fourteenth Amendment, during screening the Court implicitly rejected these claims in finding that Plaintiff had only stated a § 1983 Fourth Amendment excessive force claim and state law tort claims against Defendants Bires and Tokas. Order affirming Recommended Decision of Magistrate Judge (Doc. No. 29), ECF Page ID# 218. To the extent Plaintiff attempts to hold Defendants Tokas and Bires liable under § 1983 for the use of deadly force based on their pre-shooting conduct, Plaintiff states, at best a Fourteenth Amendment claim, which has already been implicitly rejected by the Court.

To the extent these allegations are considered as part of Plaintiff's claims against Tokas and Bires, they fail as a matter of law because they do not implicate the Fourth Amendment or any affirmative constitutional duty. It was Plaintiff's own actions that resulted in the police stand-off. *See* DSMF ¶¶ 31-35. And it was Plaintiff's own actions in firing several rounds from a rifle and throwing a Molotov cocktail at officers outside his camper that led to Defendant Duff using deadly force against him. *See* DSMF ¶ 39. There is no evidence in the record that the actions and alleged omissions of Defendants Tokas and Bires caused Defendant Duff to use

deadly force against Plaintiff nearly twenty hours later. Although pre-shooting conduct may be considered in the Fourth Amendment analysis, any link between Defendants Tokas and Bires' actions and the use of any force against Plaintiff during the standoff is far too attenuated to support § 1983 liability. For the reasons discussed above, the actions of Defendants Tokas and Bires were constitutionally permissible. Their own actions are "not rendered unreasonable because it provoke[d] a violent reaction" from Plaintiff. *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1777, 191 L. Ed. 2d 856 (2015).

As discussed fully below, there are circumstances when a police officer may have an affirmative duty to intervene to prevent an alleged use of excessive force by another officer, even if he or she does not personally use any force. *See Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n. 3 (1st Cir.1990). A claim based on an officer's failure to intervene requires specific elements and is governed by the "objectively reasonable" standard applicable to Fourth Amendment claims. See *Torres-Rivera v. O'Neill-Cancel*, 406 F.3d 43, 52 (1st Cir. 2005). However there is nothing in Fourth Amendment precedent that imposes an obligation upon officers to prevent a suspect from causing an armed standoff. Of course there is nothing to prevent a state from imposing "affirmative duties of care and protection upon its agents as it wishes. But not 'all common-law duties owed by government actors were . . . constitutionalized by the Fourteenth Amendment.'" *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 202, 109 S. Ct. 998, 1007, 103 L. Ed. 2d 249 (1989) (quoting *Daniels v. Williams*, 474 U.S. 327, 335 (1086). Plaintiff has asserted state law claims against Defendants (addressed below) arising from this incident. However, Plaintiff cannot create an affirmative constitutional duty where none exists. *Sheehan*, 135 S. Ct. at 1777.

### D. Bystander Liability Cannot Attach Because the Officers were Not Present when Deadly Force (or any Force) was Used

Plaintiff appears to allege so-called "bystander liability" claims against Defendants Tokas and Bires for failing to intervene to prevent Defendant Duff's use of deadly force against him. Complaint, ECF PageID# 166. Based on the undisputed record, Plaintiff cannot make out the elements of a bystander claim as a matter of law. "Absent evidence of participation, concerted action, or at least culpable knowledge, one officer cannot be held jointly liable under section 1983 for another officer's" alleged unconstitutional conduct. *See Calvi v. Knox Cty.*, 470 F.3d 422, 429 (1st Cir. 2006). Of course, there are circumstances when a police officer may be held liable for the failure to prevent an alleged constitutional violation by another officer, even if he or she does not personally participate. *See Gaudreault*, 923 F.2d at 207, n.3. Under certain circumstances, an officer who fails to intervene to prevent an alleged use of excessive force may be held liable under Section 1983 for his or her nonfeasance provided that the officer had a "realistic opportunity" to do so. *Id.* However, for liability to attach under a bystander theory, the defendant officer must have: (1) been present at the scene; (2) seen the use of alleged excessive force; (3) had a realistic opportunity to prevent the alleged use of force; and (4) had sufficient time to prevent the alleged use of force. *See Gaudreault*, 923 F.2d at 207, n.3. Even assuming *arguendo* that Defendant Duff's use of deadly force against Plaintiff was unconstitutional, which it was not, bystander liability cannot attach under the circumstances. Defendants Bires and Tokas were not present when Defendant Duff used deadly force against Plaintiff. DSMF ¶ 39. Once the situation escalated, the State assumed responsibility for the armed stand-off, which lasted for more than twenty hours. *Id.* ¶¶ 35-39. Officer Tokas left the scene at approximately 8:40 pm on May 31, 2018. *Id.* ¶ 38. Officer Bires left the scene shortly after his interaction with Plaintiff to return to the Ellsworth police station to prepare a search and arrest warrant. *Id.* ¶ 36. Officer Bires had no further interaction with Plaintiff and was relieved from duty at approximately 9:00

15

pm on May 31, 2014. *Id.* ¶ 37. Plaintiff was shot by Defendant Duff at approximately 3:30 am on June 1, 2014. *Id.* ¶ 39. Neither Bires nor Tokas was present at the scene or on duty when the shooting occurred. *Id.* As such, neither officer saw the alleged use of excessive force nor had a realistic opportunity to intervene. Any claims against Defendants Bires and Tokas based on a bystander theory of liability fail as a matter of law.

### II.   DEFENDANTS BIRES AND TOKAS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW TORT CLAIMS

#### A.   Plaintiff's State Law Tort Claims are Barred by the Statute of Limitation

Plaintiff's state law tort claims are barred by the statute of limitation provided in the Maine Tort Claims Act ("MTCA"). *See* 14 M.R.S. § 8110. Plaintiff's claims are against governmental employees, officers of the Ellsworth Police Department. SMF ¶ 1; *see also* 14 M.R.S. § 8102(1)-(3). Under the MTCA, "[e]very claim against a governmental entity or its employees permitted under this chapter is forever barred from the courts of this State, unless an action therein is begun within 2 years after the cause of action accrues." *Id.* The events giving rise to Plaintiff's state law tort claims against Officer Bires and Tokas occurred on May 31, 2014. SMF ¶ 3, 37-38. Plaintiff was therefore required to commence his action by May 31, 2016. Plaintiff initiated this action on June 1, 2016, beyond the two-year statute of limitation.[1] *See* SMF ¶ 44; Complaint, Doc. No. 1, ECF PageID# 4. Accordingly, his state law tort claims are time barred.

#### B.   Plaintiff Cannot Establish Assault and Battery Claims

---

[1] Plaintiff's "Declaration of Verification" states that he deposited the Complaint into an institutional US Mail Box on the "date indicated below." Complaint, Doc. No. 1, ECF PageID# 4. The date is written as "June 1, *2015.*" *Id.* (emphasis added). However, based on the date the Complaint was notarized (May 31, 2016), the date Plaintiff signed the Complaint (June 1, 2016), and the date it was received and filed with the Court (June 3, 2016), the year of "2015" in the verification is a typographical error and, in actuality, was 2016. *Id.* Pursuant to the prisoner mailbox rule, *Houston v. Lack*, 487 U.S. 266, 276 (1998), Plaintiff's Complaint was filed on June 1, 2016.

Plaintiff alleges state law tort claims of assault and battery. Amended Complaint at ECF PageID# 139. Based on the undisputed facts, Plaintiff cannot establish a *prima facie* case for his state law tort claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986) ("[T]here can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."); *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 19, 60 A.3d 759, 763 ("In order to survive summary judgment, a plaintiff in a tort case must point to evidence in the record to support each element of his or her claim.").

"Under Maine law, the torts of assault and battery by a law enforcement officer require either a false arrest or the use of excessive force during or after taking an individual into custody." *Santoni v. Potter*, 369 F.3d 594, 603 (1st Cir. 2004) (citing *Bale v. Ryder,* 290 A.2d 359, 360 (Me.1972)).  Plaintiff has not alleged that he was falsely arrested by Defendants Bires and Tokas. As discussed above, there is no evidence whatsoever that Defendants Bires or Tokas ever seized Plaintiff or otherwise took him into custody. DSMF ¶ 40. Plaintiff cannot demonstrate that Defendants Bires and Tokas used any physical force against him. Because he cannot demonstrate, as a matter of law, a false arrest or excessive force, Defendants Bires and Tokas are entitled to summary judgment on Plaintiff's state law tort claims.

To the extent Plaintiff is attempting to hold Bires and Tokas liable under a state tort theory for the shooting by Defendant Duff, his claims fail as a matter of law because there is nothing in the record to establish causation. Causation is a necessary element in a cause of action for all tort claims.  In order to establish a *prima facie* claim, there has to be a causal connection between

Plaintiff's alleged injuries and the alleged tortious conduct of Defendants. Plaintiff cannot, as a matter of law, meet that burden. If "there is so little evidence tending to show that the defendant's acts or omissions were the proximate cause of the plaintiff's injuries that the jury would have to engage in conjecture or speculation in order to return a verdict for the plaintiff," then the defendant is entitled to summary judgment. *Estate of Smith v. Salvesen*, 2016 ME 100, ¶ 21, 143 A.3d 780. Here, there is insufficient evidence for a jury to reasonably find or infer that there was a causal connection between Plaintiff's alleged damages and the actions of Defendants Bires and Tokas twenty-hours prior to the shooting. There has to be proof that "there is some reasonable causal connection demonstrated in the record between the act or omission of the defendant and the damage that the plaintiff has suffered." *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 17, 60 A.3d 759, 763. Here, a jury could not find proximate cause without "speculation or conjecture" and therefore Defendants Bires and Tokas are entitled to summary judgment on Plaintiff's state law tort claims as a matter of law. *See id.* ¶ 19.

      **C.**    **Defendants Bires and Tokas are Immune under the MTCA**

Even if Plaintiff could establish a *prima facie* case for each tort, Defendants are entitled to immunity under the MTCA. *See* 14 M.R.S.A. §§ 8101, *et seq*. Governmental employees are entitled to personal immunity under the MTCA from civil liability for "performing or failing to perform any discretionary function or duty . . . ." 14 M.R.S.A. §8111(1)(C). This is true "whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid." *Id.* The MTCA also confers absolute immunity on governmental employees for intentional acts or omissions that arise in the course and scope of their employment. 14 M.R.S.A. § 8111(1)(E). The

only exception to the grant of immunity under Section 8111(1)(E) is for intentional acts performed in "bad faith." *Id.*

Plaintiff's section 1983 claim informs the disposition of Plaintiff's claims under the MTCA. *See Berube v. Conley*, 506 F.3d 79, 85–86 (1st Cir. 2007); *see also Parker v. Dall-Leighton, et al.*, 2017 WL 6210892, at *7 (D. Me. Dec. 8, 2017). Unless the evidence could reasonably be construed to show that the conduct underlying Plaintiff's claims of assault and battery "was so egregious as to clearly exceed any discretion" the individual defendants had, they are entitled to immunity. *See Dimmitt v. Ockenfels*, 220 F.R.D. 116, 125 (D. Me. 2004). Here, there is no evidence that would allow a reasonable factfinder to conclude that the conduct of Defendants Bires and Tokas was so egregious that it "fall[s] outside the zone of immunity provided by state law." *Parker*, 2017 WL 6210892, at *7 (D. Me. Dec. 8, 2017). *See also Berube*, 506 F.3d at 85–86. During an exchange where Plaintiff refused officers' commands to return the tractor key, Plaintiff admittedly was becoming more and more agitated. Bires displayed his firearm briefly after Plaintiff refused to immediately show his hands. Bires never used any physical force against Plaintiff. Similarly, Tokas merely went and talked to Plaintiff in an attempt to deescalate the situation. This does not come close to rising to the level of egregious conduct necessary to fall outside the zone of immunity. *See Holland v. Sebunya*, 2000 ME 160, ¶¶ 17-18, 759 A.2d 205, 211–12. Defendants Bires and Tokas are therefore entitled to summary judgment on Plaintiff's state law tort claims.

## CONCLUSION

For the foregoing reasons, Defendants Bires and Tokas request that the Court enter summary judgment in their favor as to all of Plaintiff's claims against them.

Dated at Portland, Maine, this 7th day of November, 2018

*/s/ Edward R. Benjamin, Jr.*
*/s/ Kasia S. Park*

>Edward R. Benjamin, Jr.
>Kasia S. Park
>Attorneys for Defendants Bires and Tokas

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941
ebenjamin@dwmlaw.com
kpark@dwmlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2018, I electronically filed the foregoing Defendants Bires and Tokas' Motion for Summary Judgment with Incorporated Memorandum of Law with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.  A copy of the foregoing has also been sent to Plaintiff via U.S. First Class Mail Postage Prepaid to:

>Jeffrey Barnard
>10533-036
>SCHUYLKILL
>Federal Correctional Institution
>Inmate Mail/Parcels
>P.O. Box 759
>Minersville, PA 17954

>/s/ Kasia S. Park
>Kasia S. Park
>Attorney for Defendants Bires and Tokas

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941
kpark@dwmlaw.com